TRADERS' INSURANCE COMPANY v. W. R. HERBER and Others.[1]

January 4, 1897.

Nos. 10,225—(140).

### Sufficiency of Evidence.

The statement of a witness as to the existence of a fact, not presumptively within his knowledge, but the existence of which is susceptible of direct proof, *held* to be his mere conclusion, and not evidence on which a verdict can be sustained.

### Bond of Insurance Agent—Release of Sureties.

*Held*, withholding the "commission" of the insurance agents, while permitting them to perform their duties as such agents, did not have the effect, in this case, of releasing the sureties on their bond for the faithful performance of their duties.

### Same—Bad Faith of Obligee.

H. was the agent of plaintiff insurance company, and was short in his accounts. He formed a partnership with P. to carry on the agency business, and H. & P. as principals and the other defendants as sureties executed a bond to the company, conditioned for the faithful performance by H. & P. of their duties as such agents. At the time the bond was executed the sureties did not know that H. was in default. In a suit on the bond, *held*, in such cases, it is ordinarily the duty of the obligee in the bond to disclose to the sureties the fact that the principal in the bond is already in default, and a failure to do so is evidence of bad faith, which will discharge the sureties; and whether, in this case, the company was guilty of bad faith in failing to disclose to the sureties that H. was short in his accounts, is a question for the jury.

Appeal by defendants Herman C. Strelow and another from an order of the district court for Hennepin county, Smith, J., denying a motion for a new trial. Reversed.

*Benton & Molyneaux*, for appellants.

If the creditor conceals from the surety the fact that the principal has been a defaulter, the surety will be discharged. 24 Am. & Eng. Enc. Law, 793; Franklin Bank v. Cooper, 36 Me. 179; Dinsmore v. Tidball, 34 Ohio St. 411; Graves v. Lebanon N. Bank, 10 Bush, 23; Wayne v. Commercial N. Bank, 52 Pa. St. 343; West-

[1] Reported in 69 N. W. 701.

ern N. Y. L. I. Co. v. Clinton, 66 N. Y. 326; Maltby's Case, 1 Dow, 294; Railton v. Matthews, 10 Clark & Fin. 934. Mere noncommunication of material circumstances affecting the situation of the parties is undue concealment, though not willful or intentional. Wayne v. Commercial N. Bank, supra; Railton v. Matthews, supra; Smith v. Governor, 1 Dow, 272. That the agent is in arrears is a fact essential for the surety's information. It is the duty of the obligee to disclose his knowledge of any fact increasing the liability of the surety, or his knowledge of any unfaithfulness of the principal. Bostwick v. Van Voorhis, 91 N. Y. 353; Comstock v. Gage, 91 Ill. 328; Dinsmore v. Tidball, 34 Ohio St. 411; Adjala v. McElroy, 9 Ont. 580; Rapp v. Phœnix Ins. Co., 113 Ill. 390; Roberts v. Donovan, 70 Cal. 108, 9 Pac. 180, and 11 Pac. 599; Brandt, Suretyship, § 368.

*Shaw, Cray, Lancaster & Parker*, for respondent.

CANTY, J.[2]    This is an action on a bond, dated November 10, 1894, and made to plaintiff by the defendants Herber & Paine as principals and the other defendants as sureties. The condition of the bond so far as it is necessary here to recite the same, is as follows:

"The condition of this obligation is such that, whereas, the above-named Herber & Paine have been appointed agents of the Traders' Insurance Company, in Minneapolis, county of Hennepin, and state of Minnesota, who will receive, as such agents, sums of money for premiums, payment of losses, salvages, collections, or otherwise, for goods, chattels, or other property, for the said the Traders' Insurance Company, and are to keep true and correct account of the same, pay over such money promptly, and make regular daily and monthly reports of the business transacted, as required by the rules and instructions of the said company and its officers."

The alleged breach of the bond is that Herber & Paine failed to turn over to the company several hundred dollars of insurance premiums belonging to said company and received by them as such agents. On the trial the court ordered a verdict for plaintiff, and from an order denying a new trial the defendant sureties appeal.

Prior to the date of this bond, the defendant Herber had been the agent of plaintiff at Minneapolis. He and Paine made an agreement to become partners in business as insurance agents, commen-

[2] Buck, J., absent.

cing November 1st of that year, and, with the consent of the plaintiff company, to represent it as such agents in that city. Thereupon the bond in suit was executed, and sent to the company at its principal office at Chicago, and was received by it on November 24; but it refused to issue a commission of agency to the new firm until Herber had paid up all sums due the company from him on the business which had been transacted by him for the company during the preceding month of October, amounting, in all, to $1,297.96. Nevertheless, the new firm had, since November 1, conducted, and still continued to conduct, in the firm name, the business of this company theretofore carried on by Herber.

Matters dragged along until December 5, when the company wrote Herber protesting against the use of the firm name in doing its business at Minneapolis until the October balance was paid. On December 10 he forwarded to the company, of his own funds, the sum of $750. On December 15, by his individual check, he forwarded to the company the further sum of $547.96, which was sufficient to settle for the October business; but it is claimed by appellants that $500 of this last sum was taken out of the funds of the new firm, and is money that they had received as agents for this company for business done by them for it since November 1. If this fact were established, and the $500 were applied as a payment from the new firm, they would owe the company nothing, because, by applying it on the old account of Herber, as it was applied, it leaves the new firm in default to the company only for the sum of $436.52, which is the amount of the verdict.

Paine testified that he never authorized Herber to apply this $500 on his old account, and never authorized the company to do so, but also states that, within a few days after it was sent to Chicago, he knew it was so applied. He also testifies very positively that the $500 check, which he gave Herber out of the firm funds, went to the company as a part of said payment of $547.96; but how he knows this nowhere appears. This payment was made by the individual check of Herber, dated December 15, 1894, at Minneapolis, drawn on the Bank of Minneapolis, in favor of the company, for $547.96, while the payment of the $500 to Herber was made by the check of Herber & Paine, dated December 18, 1894, at Minneapolis, drawn on the Security Bank of Minnesota in favor of Herber. It will be observed

that the latter check is dated three days later than the former, and is drawn on a different bank. Neither does it appear that the latter check was ever indorsed by Herber or deposited in the Bank of Minneapolis, on which the former check was drawn by him.

Herber was called as a witness for defendants, and examined at length; but he was never asked, and never stated, what use he made of the $500 check, or what he did with it. We have no evidence on this point except the naked statement of Paine, above mentioned. Paine stated nothing that he saw and nothing that he did as respects this check, except that he gave it to Herber. How Herber applied the check is not presumptively within Paine's knowledge. Then we must hold that Paine's statement as to how the check was applied by Herber is a mere assumption or conclusion of the witness, drawn, perhaps, from hearsay, or from facts or circumstances not disclosed in evidence. Such a statement is not evidence on which a verdict can be sustained, and therefore there is no evidence in the case to show that this $500 check or its proceeds ever went to the company. Then it is unnecessary to consider whether or not, if it appeared the company had received this $500, it could be compelled, as between it and these sureties, to apply the same on the account of Herber & Paine.

2. There is nothing in the claim that the holding back of the commission of agency of the new firm changed the terms of the contract of agency, so as to release the sureties on the bond. All parties seem to have proceeded to perform this contract from the time it was made, and the holding back of the written evidence or commission of agency did not in any manner change the terms of the contract.

3. At the time of the execution of this bond, Herber was indebted to the company in the sum of $1,900 for insurance premiums received by him on business done in the months of September and October. The defendant sureties offered to prove that they had no knowledge of this fact, the offer was refused, and they assign this as error.

Their answer sets up this defense, but it only alleges Herber to be in default in the sum of $600. However, the evidence that he was in default for $1,900 was received without objection. It is contended by appellants that it was the duty of the insurance company to disclose to them that Herber was thus in default, and that the failure of the company to do so amounted to fraud upon them, which

will prevent a recovery on the bond; citing 24 Am. & Eng. Enc. Law, 793, and a number of cases therein cited, and also other cases, many of which hold that, in such cases, it is the duty of the obligee in the proposed bond to disclose to the sureties on the bond that their principal is already in default to such obligee, and that the failure of the latter so to notify the sureties is a fraud upon them.

In answer to this, respondent shows that it appears by the uncontradicted evidence that Herber told the secretary of the company, before the bond was executed, that he would receive sufficient from Paine to "square up his indebtedness" to the company; that, in the letter from Herber to the company of October 20, announcing that the new firm was to be formed, he stated:

"All balances due companies from their present agent will be paid up, and remittances will be more prompt than in the past."

And that it sufficiently appears that the officers of the company had no communication with the sureties on the bond at all, such sureties being in Minneapolis and such officers being in Chicago during the time of the transaction, and that the bond was voluntarily executed and forwarded to the company at Chicago.

Undoubtedly, all of these circumstances should be taken into consideration in determining the good faith of the company in accepting this bond without disclosing to the sureties that Herber was thus in default. But it should also be taken into consideration that the company had good reason to know that Herber had collected insurance premiums which he had not turned over, was short in his accounts, and might not be able to make up this shortage except in the manner proposed,—by taking in a partner who had agreed to pay Herber for the privilege of being admitted into the business; that the shortage in the accounts of Herber was not made up until five or six weeks after the new firm commenced business, and two or three weeks after the bond was delivered to the company; that in the meantime the company held back the commission because this old balance was not made up, though it knew that the new firm was doing business for it, and still it did not disclose any of these facts to these sureties, though it apparently took the position that it had not accepted the bond, as it had not issued the commission. We are of the opinion that, under all the circumstances of the case, the good

faith of the company in failing to disclose to these sureties the fact that Herber was short in his accounts with it was for the jury, and it was error to direct a verdict for plaintiff.

The order appealed from is reversed, and a new trial granted.