MANCHESTER FIRE ASSURANCE COMPANY v. FRANKLIN D. RED-
FIELD and Others.[1]

June 16, 1897.

Nos. 10,540—(190).

**Principal and Surety—Bond for Faithful Service—Measure of Liability.**
In an action on a bond conditioned, among other things, that the principal, as agent for the plaintiff, would pay over all moneys received by him as such agent monthly, the court charged the jury, in substance, that if the agent failed at any time to comply with the conditions of the bond, in paying over monthly the moneys which he had collected, and the plaintiff had notice, actual or constructive, of the fact, it was its duty to revoke the agent's authority, and, if it permitted him to make further collections after such notice, the sureties on the bond would not be liable therefor. *Held*, that this did not correctly state the measure of plaintiff's duties to the sureties, because it would apply to any default, whether the result of dishonesty, or of mere negligence, oversight, or accident.

**Same.**
In the case of a continuing suretyship for the faithful discharge of his duties by his servant, the master owes the sureties no absolute and active duty, upon the discovery of mere breaches of contract obligations by his servant, to discharge the servant, or notify the sureties of the breach. Lancashire v. Callahan, 68 Minn. 277, followed.

Appeal by plaintiff from an order of the district court for Hennepin county, Smith, J., denying its motion for a new trial after a verdict for the defendant sureties. · Reversed.

*Brown & Buffington*, for appellant.

The rule as to the release of the sureties applies only to cases where actual dishonesty or malfeasance on the part of the principal exists, and there must be a concealment of this fact by the obligee amounting to fraud on the sureties. Phillips v. Foxall, L. R. 7 Q. B. 666; Board v. Otis, 62 N. Y. 88; U. S. v. Kirkpatrick, 9

[1] Reported in 71 N. W. 709.

Wheat. 720; Planters v. Lamkin, R. M. Charlton, 29; Pickering v. Day, 3 Houston, 474; Pittsburg v. Shaeffer, 59 Pa. St. 350; McKecknie v. Ward, 58 N. Y. 541; Atlantic v. Barnes, 64 N. Y. 385; Richmond v. Kasey, 30 Gratt. 218; Watertown v. Simmons, 131 Mass. 85; Charlotte v. Gow, 59 Ga. 685; Home v. Holway, 4 Iowa, 87; Phenix v. Findley, 59 Iowa, 591; Aetna v. Fowler, 108 Mich. 557; Connecticut v. Scott, 81 Ky. 540.

*Edward C. Gale*, for respondent sureties.

An agent's default or breach of duty, whether by dishonesty or not, known to the employer and not communicated to the sureties, releases them from liability for subsequent defaults. Sanderson v. Aston, L. R. 8 Exch. 73; Byrne v. Muzio, 8 Ir. L. R. 396; British v. Luxton, 9 Manit. 169; Estate v. Phœnix, 113 Ill. 390; Corporation v. McElroy, 9 Ont. 580; Connecticut v. Scott, 81 Ky. 540; Socialistic v. Hoffmann, 12 Misc. Rep. 440; Dwelling v. Johnston, 90 Mich. 170; Smith v. Josselyn, 40 Oh. St. 409; Burley v. Hitt, 54 Mo. App. 272; Morrison v. Arons, 65 Minn. 321.

MITCHELL, J.

The plaintiff being about to employ the defendant Redfield as its local agent in Minneapolis, he, as principal, and the other defendants, as sureties, executed to it a bond conditioned for the faithful performance of his duties as agent; among other things, that he would pay over all moneys received by him as such agent monthly, or oftener if demanded. Redfield conducted the agency from that date, August 10, 1895, until some time in the following January, when, upon an examination of his accounts, he was found to be a defaulter for about $500 which he had collected, but failed to pay over. This suit is on the bond to recover this shortage. The defense of the sureties was, in brief, that, after the plaintiff had notice that Redfield was in default in paying over money collected by him monthly as provided in the bond, it continued him in its employ, without notifying the sureties of such default, and that the entire amount of shortage for which a recovery is sought was collected by Redfield subsequent to that time. The theory upon which the case was tried by defendants' counsel, and submitted by the court to the jury, was that if the plaintiff had notice, actual or

constructive, of any default or breach of contract, duty, or obligation on the part of Redfield, of whatever kind, which it failed to communicate to the sureties, and which was unknown to them, the sureties were released from liability for subsequent defaults.

For example, the court instructed the jury that if Redfield at any time failed to comply with the conditions of the bond, in returning a statement monthly, together with such moneys as he had collected belonging to plaintiff, and the plaintiff had notice of that fact, it was its duty to revoke his authority, and, if it permitted him to make further collections after such notice, the sureties would not be liable therefor; also, that they had a right to take into consideration all the circumstances and transactions between the parties, to determine whether plaintiff had notice, actual or constructive, that Redfield had not turned over moneys monthly which he was required to turn over, and, if they found that plaintiff had notice of that fact at any time, from that time following the sureties would not be liable for any collections subsequently made by him. This is not the correct rule, and does not correctly state the measure of plaintiff's legal duty to the sureties. We had occasion very recently to consider this subject, in Lancashire v. Callahan, 68 Minn. 277, 71 N. W. 261. That action was on a similar bond, and after stating that

"if the master discovers that the servant has been guilty of dishonesty in the course of the service, and thereafter continues him in such service, without notice to and the assent of the surety, express or implied, to such course, the latter is not liable for any loss arising from the dishonesty of the servant during his subsequent service," it was added, "But this rule has no application to cases of mere breaches of duty or contract obligations on the part of the servant, not involving dishonesty on his part, or fraud or concealment on the part of the master."

The import of the instruction was that if plaintiff had notice, actual or constructive, that Redfield was in default in remitting money collected by him monthly according to the terms of the bond, whatever the cause of the default, whether dishonesty, or mere negligence, oversight, or accident, it was bound immediately to either dismiss its agent, or notify the sureties. This rule, if correct, would apply to a breach of any other contract duty of the

agent, whatever its cause or nature. The master or employer owes no such duty of active diligence to take care of the interest of the surety. The latter has guarantied the faithful performance of his duties by his principal, and he himself owes a duty to see that his principal performs these duties. The cardinal rule of duty which the master or employer owes to the sureties of his servant is entire good faith. If he discovers acts of dishonesty on the part of his servant, and afterwards continues him in his service without notice to the sureties, he is guilty of bad faith or fraud towards them, and they would be discharged from liability for future defaults of their principal.

Most of the cases where the sureties have been held released have been of this character, but the courts have always refused to tie themselves down to any definition of "bad faith," or "fraud," of universal application. The acts of the agent need not necessarily amount to positive dishonesty in order that the master's continuing him in his service without notice to the sureties would amount to fraud or bad faith to the latter. Cases can readily be conceived of where the incompetency or negligence of the servant was so gross and habitual that good faith to the sureties would require the master to discharge him, or at least notify the sureties. The measure of duty to the sureties being good faith, mere negligence on the part of the master in failing to discover the defaults of his servant or agent will not release the sureties. But, on the other hand, it is not true, as claimed by the plaintiff, that in order to have that effect the master must have actual knowledge of such defaults. Facts and circumstances so cogently suggestive of the probable dishonesty of the servant may come to the knowledge of the master that a failure to investigate the matter would be such gross negligence as to amount to bad faith or fraud towards the sureties. This is the rule applied in various cases, as, for example, in the purchase of negotiable paper, where the question is not one of diligence, but of good faith; and there is no reason why it should not be applied in a case like the present.

For the error in the charge of the court a new trial must be had, unless the evidence was such as to require a verdict for the defendants. This it certainly was not. There was no evidence that the plaintiff had any actual and positive knowledge that Redfield had

dishonestly misappropriated any of its money until the investigation of his accounts in January. The most, we think, that can be claimed for the evidence, is that it was a question for the jury whether the facts known to the plaintiff, such as the disparity between the monthly amount of business done by the agent, as shown by his reports, and the amount of his remittances, and the late dates of these remittances, were so suggestive of a dishonest misappropriation of money that, within the rules already laid down, and at some time before the whole amount sued for was misappropriated, good faith towards the sureties did not require the plaintiff to investigate the business conduct of its agent. If so, the sureties would have at least a partial defense; that is, as to defaults occurring after it thus became the duty of the plaintiff to investigate.

Order reversed, and new trial granted.