SAMUEL H. HALL v. UNITED STATES FIDELITY & GUARANTY COMPANY.

June 14, 1899.

Nos. 11,588—(180).

**Fidelity Insurance—Contract of Insurer—Investigation of Employee.**

A certain instrument construed, and *held* to be a binding contract; that the words, "Subject to result of investigation," written across the face of the instrument, did not convert it into a mere proposal for a contract, but gave the one party a right to cancel it, so as to prevent any future liability after notice of such cancellation.

**Admissions of Insured as to Accounts—Evidence against Insurer.**

*Held*, certain admissions of the principal were made in the course of the business, the faithful performance of which the surety guarantied; that such admissions were a part of the res gestæ, and are evidence against the surety.

Action in the district court for Hennepin county to recover on a contract guarantying the fidelity of an employee. The case was tried before McGee, J., and a jury, which rendered a verdict in

favor of plaintiff for $211.53; and from an order denying a motion for a new trial, defendant appealed.    Affirmed.

*Cobb & Wheelwright,* for appellant.

*Hendrix & Merritt,* for respondent.

CANTY, J.

Defendant is, and at the times hereinafter stated was, a corporation engaged in the business of guarantying the honesty and fidelity of persons in the employ of others, and plaintiff, Hall, was engaged in the business of buying and selling potatoes and other produce.    His place of business was at Minneapolis, but he purchased potatoes in the country towns tributary thereto.    On March 9, 1898, one Newton, a stranger to plaintiff, applied to him for employment as a purchaser of potatoes for plaintiff, as his agent, on commission, at River Falls, Wisconsin.    Defendant had been in the habit of insuring the fidelity of plaintiff's employees, and plaintiff sent his agent with Newton to defendant's office, in Minneapolis, to procure insurance for him as such purchaser.    The agent then made to defendant a written application for the insurance, and informed defendant that Newton was an entire stranger to him and to plaintiff, and that plaintiff wanted the insurance without delay.    The next day defendant executed to plaintiff the following contract:

"In consideration of the sum of five and no/100 dollars, the United States Fidelity and Guaranty Company hereby guaranties the fidelity of A. Tracy Newton in the sum of five hundred dollars, in favor of S. H. Hall & Co., from the 9th day of March, 1898, to the 9th day of March, 1899, subject to all the covenants and conditions set forth and expressed in the bond of this company to be issued on even date herewith, and forwarded from the home office within fifteen days from date of issue.    All liability of the company on this instrument shall cease and determine on the issuance by the company of the duly-executed bond, or if the bond is not issued on the fifteenth day from the countersigning of said instrument by the general agent."

Across the face of this contract was written in ink, "Subject to result of investigation."    On receiving this contract, plaintiff employed Newton, and advanced him money to purchase potatoes for plaintiff at River Falls.    Plaintiff brought this action on the con-

tract, under the claim that Newton embezzled $211.53 of this money within the 15 days mentioned in the contract. On the trial, plaintiff had a verdict for that amount, and defendant appeals from an order denying a new trial.

Appellant contends that the words, "Subject to result of investigation," written across the face of the contract, converted what would otherwise be a contract into a mere proposal for one, to become binding on defendant only in case the investigation proved satisfactory. We cannot so hold. This construction would render the temporary contract wholly meaningless and nugatory. Plaintiff had already made an application for insurance, and there was no occasion for a counter proposal. The contract states, in plain and positive terms, that defendant "hereby guaranties the fidelity" of Newton, and that all liability on the instrument shall cease on issuance of the regular bond, or in 15 days if no such bond is issued. Why should such language be used, if it was not intended to mean anything? If a mere proposal was intended, why not rest on plaintiff's written application, and wait for the regular bond? In our opinion, the words, "Subject to result of investigation," should be so construed as merely to give to defendant the right to cancel the contract on further investigation, and thereby exempt itself from liability for any loss resulting from continuing Newton in the employ of plaintiff after notice of the cancellation. This construction will give effect to all parts of the contract, and it seems to us is more in accord with the intention of the parties.

Within 10 days after Newton was so employed, plaintiff advanced to him in the aggregate $1,416.94, with which to purchase potatoes. The last sum so advanced was $590, on March 19, 1898. A few days after this plaintiff sent another employee—one Eaton—to River Falls to take Newton's place, and complete the transactions commenced by him. Newton then returned to Minneapolis, and was there requested by plaintiff to take up his account with plaintiff's bookkeeper. Newton proceeded to do so, examined his account in plaintiff's books, admitted that it was correct, and that the balance there appearing against him was correct, but that he did not have the balance of the money there charged against him; that he did not know what he did with it; and he offered to work

for plaintiff in order to pay it. The competency of these admissions is assailed by appellant. We are of the opinion that these admissions were a part of the res gestæ, and were competent. A part of Newton's duty was to account for the moneys received by him as plaintiff's agent. Defendant guarantied Newton's fidelity in making that accounting as much as it did his fidelity in any other part of his duty as plaintiff's agent. See Lancashire Ins. Co. v. Callahan, 68 Minn. 277, 71 N. W. 261; Capital Fire Ins. Co. v. Watson, 76 Minn. 387.

After Eaton took Newton's place at River Falls, the account with Eaton in plaintiff's books was kept as a continuance of the account of Newton and as a part of that account. There is nothing in appellant's claim that, because the account was kept in this manner, the credits shown by the whole continuous account should be applied to the oldest items on the debit side, and, when so applied, it appears that the whole sum received by Newton has been repaid. The actual facts were fully explained by the oral evidence. Neither is there anything in the claim that Newton's said admissions are not competent because it appears that they were made with reference to this whole continuous account. Plaintiff and his bookkeeper each testified that the bookkeeper and Newton went over the whole account item by item. This disposes of all the questions raised having any merit.

Order affirmed.