## UNION CENTRAL LIFE INSURANCE COMPANY v. H. G. F. PRIGGE
### and Another.[1]

October 30, 1903.

Nos. 13,700—(47).

**Bond of Indemnity.**

Language found in a surety bond given to an insurance company by its agent construed. *Held* to contain, among other obligations, an unequivocal promise to indemnify the obligee company for all loss arising out of any indebtedness then due and owing by the agent.

**Subsequent Indebtedness of Obligor.**

*Held*, further, that as to an indebtedness accruing subsequent to the execution and delivery of the bond, a case was made for a jury under the rules laid down in Manchester F. A. Co. v. Redfield, 69 Minn. 10. And also that, when passing upon the question of the obligee's good faith, the fact that the agent was delinquent when the bond was executed might be considered.

Appeal by defendant Henry F. Greenhagen from an order of the district court for Wright county, Giddings, J., denying a motion for judgment notwithstanding the verdict or for a new trial. Reversed and new trial granted.

*F. E. Latham* and *James C. Tarbox*, for appellant.

*Chas. P. Barker*, for respondent.

COLLINS, J.

This action was brought against defendants, Prigge, as principal, and Greenhagen, as surety, upon a bond executed and delivered by them to the plaintiff, an insurance company. This bond was conditioned that if Prigge, as the company's agent for procuring applications for life insurance, should

> "Pay or hand over all moneys belonging to said company which shall at any time be received by him, or for which he shall be liable, * * * including all moneys so received prior to the date of this instrument (if any such there be) as well as that received thereafter, as also all moneys which he now owes or

[1] Reported in 96 N. W. 917.

may hereafter owe said company, either on account of advances to him or otherwise, and shall faithfully discharge the duties as said agent, then this obligation shall be void."

Judgment was demanded as against both defendants for the full amount of the penalty of the bond, which was $500. At the trial below the court ordered a verdict in favor of the plaintiff against both defendants for the sum of $487.80. This appeal is from an order denying a new trial to defendant Greenhagen.

It appears from the record that the defendant Prigge entered into the employ of the plaintiff company as its agent some six months before the bond, which bore date June 29, 1900, was executed and delivered. This employment was under a contract which prescribed his duties and provided for a bond for faithful performance thereof on his part. But no bond was given until the one in question, some six months after he commenced work. Another similar contract was entered into simultaneously with the bond. It was alleged in the complaint that during this period, and prior to the execution of the bond, Prigge received from applicants for policies a certain amount of money, and of this, deducting his commissions, the sum of $143.04 belonged to plaintiff, and had not been paid over, and this stood admitted by the answer. On the pleadings, therefore, there was no dispute between the parties as to the sum of money due and owing from Prigge to the plaintiff at the time the bond was executed. It was further alleged in the complaint that subsequently, and after the bond was executed, and while Prigge was in plaintiff's employ about one year, he received various sums of money from policy applicants, and of these sums he held and retained the sum of $358.91 of the plaintiff's money, which should have been paid over to it. This allegation was put in issue by the answer, and it was averred that defendant Greenhagen did not know, when entering into the bond, that Prigge was then, or ever had been, in plaintiff's employ, or that he was indebted to it; and, further, that plaintiff wrongfully and fraudulently concealed the fact from him. We may say at the outset that, in so far as future faithfulness and discharge of duty were involved, no real distinction can be made between the condition in this bond and those considered in Traders' Ins. Co. v. Herber, 67

Minn. 106, 69 N. W. 701, and Capital F. Ins. Co. v. Watson, 76 Minn. 387, 79 N. W. 601. They are practically the same.

1. It is contended by counsel for the appellant that the court erred in receiving in evidence the entries found in the account books of plaintiff, the same being made up, it is alleged, wholly from admissions or memoranda furnished by Prigge when sending in applications for insurance, the precise point being that these entries are not competent evidence against Greenhagen, the surety upon the bond. As before stated, it stood admitted upon the trial that the principal upon the bond was in default to the plaintiff in the sum of $143.04 at the time the bond was executed. If the then existing default of the principal was absolutely secured by the bond, there can be no dispute whatever that plaintiff was entitled to recover the sum due, because there was no issue of fact made by the pleadings as to Prigge's indebtedness. It was therefore immaterial that incompetent evidence was introduced tending to establish a conceded claim.

The books of account were kept by the plaintiff in the usual course of business, and the foundation for the introduction of some of the entries therein appearing both in favor of and against Prigge, as to transactions subsequent to June 29, was sufficiently laid in accordance with the provisions of G. S. 1894, § 5738. But it appeared from the testimony of the lady bookkeeper that many items contained in the Prigge account were charged by her against him solely because of certain memoranda furnished by him in the applications for insurance, which he sent in from time to time, each of these applications showing whether the first premium had been paid in cash by the person seeking insurance, or a note had been taken. If, according to Prigge's report or memoranda, the amount of the first premium had been paid to him in cash, his account was charged with the amount reported as received, and credited with the amount of his commissions, one-half of the premium. As we understand from the books and the testimony, no debits or credits were entered upon the account, in case notes were received by Prigge from the applicants for policies, until the money was actually received on the notes. It also appears from the books that advances were made to Prigge on account of commissions claimed to have been earned, but uncollected, the amounts thereof being charged on his account. Except as to certain advances charged in the account,

the bookkeeper had no personal knowledge of the correctness of the charges, or that the entries were just or true. The question therefore arises as to the sufficiency of these entries in the books of account to establish that part of the directed verdict in excess of $143.04.

It is well settled in this jurisdiction that under the provisions of section 5738, supra, a party to a cause may produce at the trial his account books, and upon laying the foundation therein provided for, may introduce the books in evidence, and they then become prima facie evidence as against third parties of the charges therein contained. The application of this statute is not expressly or by fair implication limited to cases where the charges so made and the accounts so kept are between both parties, or between all parties to the action. Coleman v. Lumbermen's Ins. Assn., 77 Minn. 31, 79 N. W. 588, and cases cited. Therefore, in so far as the items in the account books were properly charged, the books were prima facie evidence of the agent's indebtedness to the company. Certainly some of the items, especially those in reference to money advanced, were properly shown through the introduction of the books; but as to other items, which were charged by the bookkeeper solely upon statements made in the applications, they were not properly received in evidence. All that the bookkeeper knew was what she had gathered from the applications, and, while the applications themselves might have been received as admissions made by Prigge, entries in the account books were not the best evidence; in fact, were hearsay, and were not and could not have been made in conformity with the statute. Hall v. U. S. F. & G. Co., 77 Minn. 24, 79 N. W. 590, is relied upon by plaintiff's counsel as sustaining the court below. But from an examination of that case it appears from the testimony that the delinquent himself examined his account in plaintiff's books, and admitted it to be correct. With this proof it was proper, the court held, to introduce the books in evidence. See also note to Hall v. Chambersburg Woolen Co. (187 Pa. St. 18) 52 L. R. A. 689. But there was no such testimony here, and to the extent indicated the books were improperly received.

2. Was it the duty of plaintiff company, obligee in the bond, to disclose to the defendant surety, at the time it was executed, that the principal therein was already in default, and was it its duty subsequently and promptly to disclose the fact that the default not only con-

tinued, but that the indebtedness was steadily increasing from month to month? The condition of the bond, as to indebtedness on account of moneys received prior to its date and in Prigge's hands at that time, was plain and unambiguous. The obligation expressly referred to moneys received by Prigge prior to its date, and again to all moneys which he then owed on account of advances or otherwise. If there had been no further or other condition in the bond than this, defendant's counsel would never have suggested that the fact that an indebtedness then existed was a defense in behalf of a surety. The fact that there was another and further condition in respect to money which might thereafter come into Prigge's hands as agent, and be retained by him, can have no effect upon the condition as to indebtedness which then existed, except as hereafter noticed. The promise to indemnify in case of present indebtedness was unequivocal, and the wording of this branch of the condition was notice to the surety sufficient to put him upon inquiry. It was his duty then to learn whether any money had been received by Prigge which had been improperly retained by him. As to the money then due, the surety cannot escape liability upon the ground that plaintiff was guilty of bad faith or fraud.

But a different view must be taken in respect to the money subsequently collected and retained by Prigge and as to such sums as were advanced after June 29. It appears from the record that in no one instance did he pay over to plaintiff any part of the various sums of money collected. From the time of the commencement of his employment down to the time he ceased work for the plaintiff—one and a half years—he appropriated, in violation of his contract, and with the plaintiff's knowledge, all moneys collected from proposed policy holders, so that for more than a year after this bond was executed his indebtedness to plaintiff steadily increased every month, of all of which the plaintiff had full notice and of which the surety was ignorant. It has been held that, when the facts and circumstances are cogently suggestive of the probable dishonesty of a servant, a failure to investigate the matter is negligence, which may amount to bad faith and fraud towards a surety upon the servant's bond; and also that the cardinal rule of duty which the master or employer owes to the sureties of his servant is entire good faith. If he discovers acts of dishonesty on the part of his servant, and afterwards continues him in his service, without

notice to the sureties, he is guilty of bad faith or fraud towards them, and they [will] be discharged from liability for future defaults of their principal." Manchester F. A. Co. v. Redfield, 69 Minn. 10, 71 N. W. 709. Attention should here be called to the rule therein laid down as to the duty of the master in respect to mere breaches of contract obligations by the servant.

The court erred in directing a verdict for the plaintiff in any sum in excess of $143.04, and also erred in refusing to submit to the jury the question of the plaintiff's good faith in respect to the collections made after the execution of the bond. And in passing upon this question of good faith the fact of the prior delinquency may be considered.

Order reversed, and new trial granted.