## LAC QUI PARLE TOWN FARMERS UNION FIRE INSURANCE COMPANY v. O. Z. REMSBERG.[1]

November 15, 1935.

No. 30,448.

[1]Reported in 263 N. W. 455.

*Doherty, Rumble & Butler,* for appellant.
*Daly & Barnard,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff is a farmers mutual fire insurance company. Martin A. Stemsrud was its treasurer over a considerable number of years and as such from time to time had executed to it his official bond conditioned that "if the said Martin A. Stemsrud shall faithfully perform the duties of his office and pay over all moneys which shall come into his hands by virtue of his said office, to the party or parties legally entitled thereto, then this obligation shall be void, otherwise to remain in full force and effect." Having been reëlected to that office in the year 1930, the bond upon which the present cause is founded was executed by him as principal and John R. Swann, Ole A. Stemsrud, and Severin P. Satre as sureties. This instrument was promptly approved and filed by plaintiff. When that term expired (January 27, 1931) another was elected to take his place. Stemsrud failed to pay over to his successor in office an amount exceeding $24,000. In the meantime the surety Swann had died, the date of his death being June 16, 1930. Plaintiff in

due season filed a claim against his estate in the probate court having jurisdiction thereof, and same was there allowed. The representative of the estate appealed to the district court from such allowance. In that court the appeal was consolidated with an action already therein pending brought by the plaintiff against the defaulting treasurer and the other sureties as defendants. The district court found for the plaintiff and ordered judgment for the full amount of the default, that being the same amount as theretofore determined and allowed by the probate court. A blended motion for amended findings and conclusions of law or new trial was thereupon made and by the trial court denied. From this order the representative of the Swann estate alone appeals. Hereafter we shall refer to him as the defendant.

Two assignments of error are made here: (1) That the court erred in denying defendant's blended motion, and (2) that the court's findings are not justified by the evidence and are contrary to law. Defendant's brief is devoted to two propositions, and these we shall proceed to discuss in the order set forth in his brief.

1. Defendant asserts that this instrument is a fidelity bond with uncompensated sureties and that as such the law of suretyship applies; also that such sureties are favored in the law. He quotes from 6 Dunnell, Minn. Dig. (2 ed. & Supp. 1932) § 9105, where this is said:

"The sureties are entitled to have their contract construed strictly in their favor and they are discharged by any material departure from the contract or *bad faith on the part of the obligee in failing to inform them of the dishonesty or default of the principal.*"

The italicized portion is that to which appellant's first attack is directed. See also Stearns, Suretyship (2 ed.) § 106, p. 152. The case of Lancashire Ins. Co. v. Callahan, 68 Minn. 277, 280, 71 N. W. 261, 262, 64 A. S. R. 475, is referred to and the following quotation taken therefrom:

"This brings us to the second defense made by the defendant. The law as to this defense is that, where there is a continuing suretyship for the faithful discharge of his duties by a servant, if

the master discovers that the servant has been guilty of dishonesty in the course of the service, and thereafter continues him in such service, without notice to and the assent of the surety, express or implied, to such course, the latter is not liable for any loss arising from the dishonesty of the servant during his subsequent service. But this rule has no application to cases of mere breaches of duty or contract obligations on the part of the servant not involving. dishonesty on his part, or fraud or concealment on the part of the master."

Not to be overlooked, however, is the rule that:

"The measure of duty to the sureties being good faith, mere negligence on the part of the master in failing to discover the defaults of his servant or agent will not release the sureties." Manchester F. Assur. Co. v. Redfield, 69 Minn. 10, 13, 71 N. W. 709, 710. See also Capital F. Ins. Co. v. Watson, 76 Minn. 387, 389-390, 79 N. W. 601, 77 A. S. R. 657; Fidelity Mut. L. Assn. v. Dewey, 83 Minn. 389, 86 N. W. 423, 54 L. R. A. 945; Union Cent. L. Ins. Co. v. Prigge, 90 Minn. 370, 96 N. W. 917.

We need not question the rule for which defendant contends. His difficulty arises not from the law bearing upon this subject, but rather and only because the facts are decidedly against him, and so are the court's findings. Under these circumstances, we have but to look to the record to ascertain whether the findings of the court are sustained by the evidence. We have done so and have come to the conclusion that not only are these findings sustained but it is seriously to be doubted that findings to the contrary could be sustained. About all that defendant has brought forth upon which to hang his defense is a conversation that took place some time after the execution of the bond where one Hayden was traveling by train from Madison to St. Paul, and with him were Mr. Elsen, president of the company, and Mr. Bly, a director. During that trip Hayden told them that he had received a credit report to the effect that the treasurer Stemsrud in making a report to a credit agency had reported that he was indebted (to whom or in what different amounts is not shown) in a sum in excess of $80,000. He, Hayden,

then inquired of Elsen and Bly if they actually knew whether Stemsrud had their money and, if so, where it was deposited. Some six months later Mr. Hayden inquired of Mr. Bly if any investigation had been made of the treasurer's accounts. On each occasion he was advised that no investigation had been made. The next item relates to a conversation had between one Wallsmith, the secretary of the insurance company, with one Ryerson, a banker at Dawson, concerning Stemsrud's account with the Ryerson bank. Wallsmith told Ryerson that he was looking around to find out if there were any banks where Stemsrud had the money belonging to the insurance company and that up to that time he had found no such banks. That, in sum and substance, is all the evidence upon which defendant's case rests. All the witnesses testifying in the case freely admitted that Mr. Stemsrud was a man of excellent repute, that he bore a good name, and that no one suspected that he was in truth and in fact a defaulter. At the time of trial no testimony was sought or solicited from him, the principal, nor from the other sureties. The record before us suggests no reason for not having these people testify. As a matter of fact, in defendant's answer herein he avers upon "information and belief" that Stemsrud had been robbed and that this was the reason for the shortage in his accounts. Thus it is obvious that defendant is relying upon surmise and suspicion rather than upon direct proof or upon inferences to be drawn from available facts. So we may dismiss without further comment this claim of defendant. It is utterly lacking in substance. The trial court found against him, and there can be no doubt that the evidence amply justified the trial court in making this finding.

2. The next question relates to defendant's claim that Stemsrud's defalcations, for which the present suit is brought, occurred prior to the time of the bonding period covered by the bond in this case. The rule of law applicable is well stated in Township of Angus v. Campion, 183 Minn. 9, 235 N. W. 615. The syllabus reads:

"Where a defalcation occurs on the part of a public official who has succeeded himself as such for one or more terms and given

different bonds assuring his fidelity to his trust, the liability falls upon the bondsmen who were such at the time of the defalcation, following Board of Education v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 A. S. R. 374."

In addition to the case cited and the one referred to in the syllabus, see also the cases cited by Mr. Justice Stone in a concurring opinion commencing at p. 11 of 183 Minnesota Reports. Here, too, defendant encounters trouble, not because the law cited by him does not afford an adequate defense, but rather that the evidence in the case fails to sustain him. He also overlooks the fact that, as stated by this court in Board of Education ·v. Robinson, 81 Minn. 305, 84 N. W. 105, 83 A. S. R. 374 (fifth syllabus paragraph of Minn. Rep.) :

"*Prima facie* the sureties on the last bond are liable for such funds as are properly chargeable to the officer, as shown by the books of his office at the time of his retirement, and the burden is upon such sureties to show that the defalcation in fact occurred during a prior term."

Because of defendant's inability to make such proof, the trial court was clearly right in holding defendant to responsibility.

3. As we see the case, fact questions alone are involved. There is no quarrel in respect of the law. The order appealed from must be and is affirmed.