# NEW AMSTERDAM CASUALTY COMPANY v. ROBERT A. LUNDQUIST AND OTHERS. LYLE R. BARKER AND ANOTHER, DEFENDANTS AND THIRD-PARTY DEFENDANTS.

198 N. W. 2d 543.

June 2, 1972—Nos. 43047, 43054.

*Erickson, Zierke, Kuderer, Utermarck & Sinor* and *O. C. Adamson II,* for appellants Barker.

*Dougherty & Scott,* for appellant New Amsterdam Casualty Company.

Heard before Knutson, C. J., and Rogosheske, Todd, and Mason, JJ.

TODD, JUSTICE.

These appeals arise out of two actions brought by a surety to recover from indemnitors the amounts it was required to pay under two contractors' bonds following default by its principal. In one action (No. 43054), the surety, New Amsterdam Casualty Company, sought to recover from Robert A. Lundquist, Ruth Lundquist, Lyle R. Barker, and Orel A. Barker, amounts it paid to complete the construction of a school. In the other (No. 43047), New Amsterdam, upon being sued by a supplier for payment for materials furnished the principal in construction of a water-treatment plant, brought a third-party action against the Barkers for indemnity.

In the direct action, the trial court held that the surety could

recover from the Lundquists. However, it held the Barkers were entitled to judgment in their favor because New Amsterdam, by its inaction and failure to preserve assets and to communicate with those defendants, had prejudiced them. In the third-party action, the trial court determined that New Amsterdam was entitled to full recovery against the Barkers including interest and attorneys' fees amounting to $25,355.53.

The judgment in favor of defendants in the first action is affirmed. The judgment in favor of the surety in the second is reversed and the matter is remanded for a new trial.

The parties to these actions are interconnected and dealt with one another in multiple capacities. Defendant and third-party defendant Lyle R. Barker[1] was a businessman in Fairmont, Minnesota, operating an insurance agency. Part of his business included writing insurance for plaintiff and third-party plaintiff, New Amsterdam Casualty Company. In 1957 Barker, as an active member of the Fairmont Chamber of Commerce, was informed that defendant Robert A. Lundquist, who was then doing general contracting in northern Iowa, might be interested in relocating his business in a town in southern Minnesota. At that time Lundquist stated that he was not interested in moving, but later in the year he contacted Barker, indicating that he had changed his mind and now desired to move his construction operations to Fairmont.

Since New Amsterdam's insurance line included construction performance bonding, and Barker felt this a good opportunity to secure a new customer for his agency and New Amsterdam, he contacted John Ferguson, the Minneapolis representative of New Amsterdam, and the two of them met with Lundquist in Iowa to discuss the matter. As a result, Lundquist moved his contracting operations to Fairmont. On February 11, 1958, a corporation named Lundquist Constructors, Inc., was formed

---

[1] Defendant and third-party defendant Orel Barker is the wife of Lyle R. Barker. Her only participation in the events of this case was the actual signing of the indemnity agreements.

by Lundquist, who acted as president; Barker, who acted as vice president; and Ruth Lundquist, wife of Robert Lundquist, who acted as secretary-treasurer. Other stockholders were Roy Palmer, a business associate of Barker; Peterson & Landon, a partnership; and Peterson Electric Company, Inc. Prior to moving to Fairmont, Lundquist had operated his business in Iowa as a partnership, and subsequently as a sole proprietorship, under the name Lundquist Construction Company.

Soon after its incorporation, Lundquist Constructors, Inc., was a successful bidder for the construction of the Trimont School, and New Amsterdam issued the performance bond. At this time, Barker assisted in the preparation of the financial statement of Lundquist Constructors, Inc., but refused to sign as an indemnitor on the bond. This job was completed without incident except as to allocation of payments to a subcontractor, Missouri Valley Steel Company.

Prior to the issuance of the Trimont bond, Ferguson advised Barker that he had received Dun & Bradstreet reports on Lundquist and their contents were good. He further advised Barker that since he was an agent for New Amsterdam he should no longer prepare any of the financial statements for the corporation.

In February 1959, Barker, Lundquist, and Palmer purchased Fairmont Cast Stone Company, a Minnesota corporation, and Barker and Lundquist became officers and shareholders of this company. Shortly thereafter, financial statements of Lundquist Constructors, Inc., and Fairmont Cast Stone were filed with New Amsterdam, together with personal financial statements of Lundquist and Barker, and another Dun & Bradstreet report was received by New Amsterdam on Lundquist Constructors, Inc. This financial report was satisfactory.

On June 11, 1959, Lundquist Constructors, Inc., was awarded the contract to build a water-treatment plant for the city of Fairmont. A bond application was furnished the corporate officers, and Ferguson advised Barker that New Amsterdam's policy had

changed and it now required all officers of Lundquist Constructors, Inc., to sign as indemnitors on the bonds. On June 17, 1959, defendants Barker and Mr. and Mrs. Lundquist signed the indemnity agreement, and on June 25 the bond was issued by New Amsterdam. At about the same time, on June 16, 1959, New Amsterdam sent form letters to suppliers on the Trimont job, including Missouri Valley Steel Company, inquiring as to the status of their accounts with Lundquist Constructors, Inc. On June 17 Missouri Valley Steel advised New Amsterdam that it had not segregated payments received on the Trimont school project but had applied them against balances still owing from Lundquist which arose out of other construction projects, including the building of a courthouse in Iowa, begun prior to incorporation of Lundquist Constructors, Inc., in Minnesota. This project had not been completed until after Lundquist moved his operations to Fairmont and formally organized the corporation.

New Amsterdam did not advise Barker, in his capacity as its agent or in his capacity as indemnitor on the bond, of the communication received from Missouri Valley Steel prior to the time Lundquist Constructors, Inc., could not meet its obligations.

On September 17, 1959, Lundquist Constructors, Inc., was awarded a contract to construct an addition to the school at Raymond, Minnesota. A bond application for that job was forwarded to Lundquist, together with a bond which had already been executed by New Amsterdam. Barker and his wife again signed as indemnitors on the bond.

Not until March 1960 was any problem with Lundquist Constructors, Inc., raised. At that time, Ferguson advised Barker that the reports on Lundquist Constructors, Inc., were not too good and that Ferguson wished Lundquist would level with Barker. In June a meeting was held between Lundquist, Barker, and Roy Palmer, during which Lundquist assured Barker and Palmer that Lundquist Constructors, Inc., had approximately $80,000 in accounts receivable and was on sound financial footing. But on July 6, 1960, Lundquist confessed to Barker that the

accounts receivable were fictitious and that Lundquist Constructors, Inc., was broke. Barker and Palmer advised Lundquist to contact New Amsterdam immediately, which he did. On July 13, 1960, Barker received a letter from New Amsterdam demanding financial assistance under the indemnity agreement. On July 16 Barker advised New Amsterdam that he had no liquid assets and refused the request contained in the letter of July 13.

On July 18, 1960, a meeting was held at the Wilken Motel in Fairmont between Palmer, Barker, and Lundquist, and New Amsterdam's representatives, Tom Kennett and Bruce Miller, to review the situation. At that time, the Fairmont job was virtually completed, but the Raymond job was far from finished. The other corporation in which Barker and Lundquist had an interest, Fairmont Cast Stone, had outstanding contracts upon which New Amsterdam had furnished bonds in the amount of approximately $90,000. As a result of the meeting, Barker resigned from Lundquist Constructors, Inc., and surrendered his stock to Lundquist. Lundquist resigned from Fairmont Cast Stone and surrendered his stock to Barker. Barker signed a letter, dictated by the New Amsterdam representatives, agreeing that New Amsterdam should relet the Raymond school job to Robert A. Lundquist and Virgil Beckstrand. An agreement was executed July 19 between Lundquist and Beckstrand as partners and New Amsterdam to complete the Raymond school job. Barker took over Fairmont Cast Stone and completed all of its contracts without any loss to New Amsterdam.

At that time, Lundquist Constructors, Inc., had certain assets consisting of machinery and equipment of the value of $60,000, against which there was a $24,500 mortgage; supplies and materials; and real estate valued at $10,000, upon which there remained $3,000 due and payable under a contract for deed. It appears that the work commenced immediately on the Raymond job, that both that project and the Fairmont plant were completed, and that New Amsterdam sustained losses on both projects.

Pursuant to the terms of the surety bonds, all assets of Lundquist Constructors, Inc., were assigned to New Amsterdam by reason of the default, and it took possession of them. On September 25, 1960, Barker wrote New Amsterdam advising that the mortgage held by the bank on certain equipment was past-due, that the equipment was worth considerably more than the balance of $24,500, and that as their representative in this matter he thought they would want to pick up the mortgage and apply the overage against the contracts that were in default. On October 11, 1960, Barker again wrote New Amsterdam advising that the bank had set October 18 as the deadline and thereafter would proceed to foreclose the mortgage. New Amsterdam did not respond to either of these communications.

On April 24, 1961, to satisfy the mortgage of the bank, the sheriff of Martin County sold some of the equipment covered by the chattel mortgage to Fairmont Cast Stone. The evidence shows that a substantial part of the machinery had disappeared at the time of this sale.

In May 1961, Missouri Valley Steel Company commenced suit against New Amsterdam for material supplied on the Fairmont job, alleging that it had an unpaid account of $15,000 on this job. New Amsterdam interposed an answer and commenced the third-party action against Barker and his wife. The third-party action was then severed. During the course of the trial of the main action, Missouri Valley Steel proposed to New Amsterdam and its counsel a settlement offer of $10,000, but although Barker testified for New Amsterdam and his counsel was present throughout the trial, this offer of settlement was never communicated to Barker or his counsel. The trial resulted in a judgment against New Amsterdam for $15,000. Upon appeal to this court, the judgment was affirmed.[2]

On January 20, 1967, New Amsterdam commenced a separate action against Mr. and Mrs. Lundquist and defendants Barker

---

[2] Missouri Valley Steel Co. v. New Amsterdam Cas. Co. 275 Minn. 433, 148 N. W. 2d 126 (1966).

on their indemnity agreement on the Raymond school project. This matter was consolidated for trial with the severed third-party action, and defendants Barker demanded a jury trial. At the close of the evidence, the trial judge discharged the jury and entered findings of fact, conclusions of law, and order for judgment determining that Barker and his wife were not indebted to New Amsterdam on the Raymond school project, part of the claim having been disallowed on a prior motion because of the statute of limitations and the balance of the claim being denied because plaintiff neither sought salvage to minimize the indemnitors' obligation, nor gave them notice of loss, which might have reasonably compelled them to seek protection of the equities. The court held that the plaintiff's inaction and failure to communicate with them prejudiced defendants Barker, that their obligations under the indemnity contract were materially increased, and that by reason thereof they should be relieved of any obligation to New Amsterdam on the Raymond project losses.

The court further held that the indemnitors were liable to New Amsterdam on the Fairmont job and ordered judgment for plaintiff for $15,000, plus accrued interest and attorneys' fees. The judgments were entered on January 21, 1971. The Barkers appeal from the judgment adverse to them and from an order denying their motion for a new trial. New Amsterdam appeals from the judgment in favor of the Barkers and from an order denying its motion for a new trial. We affirm the judgment in favor of defendants Barker against New Amsterdam. We reverse the judgment for New Amsterdam against the Barkers and remand that matter for a new trial.

In disposing of the issues raised by these appeals, it is first necessary to examine the relationship of the parties and their representative rights and obligations. Barker was not only an agent of New Amsterdam, but was also an indemnitor on two separate bonds. The bond applications of the indemnitee and the separate indemnity agreements executed by Barker and his wife clearly defined their liabilities to New Amsterdam. Absent any

conduct on the part of New Amsterdam which would have relieved the obligations of the indemnitors, they were liable. In addition, it was defendant Lyle Barker's duty to disclose all pertinent facts to his principal. There is no evidence in this case that Barker violated any of his obligations as agent for New Amsterdam.

New Amsterdam occupied the position of both principal and indemnitee. As principal, it had certain obligations to Barker. The only evidence which would indicate a possible violation of its obligations as principal was the failure to disclose to Barker that it had received a communication indicating that Lundquist had made certain payments to a supplier, Missouri Valley Steel, which were being applied to Lundquist's general account and not to specific debts related to projects for which the agent had procured bonds for New Amsterdam. New Amsterdam would have the same obligation in its relationship as indemnitee of Barker. Both appeals are disposed of by considering the relationship of the parties in their capacities as indemnitor and indemnitee.

1. In an early Minnesota case, Union Central Life Ins. Co. v. Prigge, 90 Minn. 370, 374, 96 N. W. 917, 918 (1903), this court said in relation to the duty of a principal to a surety on a fidelity bond:[3]

"* * * It has been held that, when the facts and circumstances are cogently suggestive of the probable dishonesty of a servant, a failure to investigate the matter is negligence, which may amount to bad faith and fraud towards a surety upon the servant's bond; and also that the cardinal rule of duty which the master or employer owes to the sureties of his servant is entire good faith. If he discovers acts of dishonesty on the part of his

---

[3] In several instances, the rules have been made in the case of a principal and surety, rather than on indemnitee and indemnitor. But the relationship is so similar that there appears no reason for differentiating the rules as they apply to one pair or the other. See, American Cas. Co. of Reading, Pa. v. Idaho First Nat. Bank, 328 F. 2d 138 (9 Cir. 1964), and authorities cited therein.

servant, and afterwards continues him in his service, without notice to the sureties, he is guilty of bad faith or fraud towards them, and they [will] be discharged from liability for future defaults of their principal."

See, also, Manchester Fire Assur. Co. v. Redfield, 69 Minn. 10, 71 N. W. 709 (1897).

A leading case in this area is Hiern v. St. Paul-Mercury Ind. Co. 262 F. 2d 526, 529 (5 Cir. 1959), which states:

"We think it is clear, therefore, that if, as is alleged, [appellee indemnitee's] failure to act, after promising it would do so, permitted appellant's co-indemnitor to dispose of misappropriated assets while appellee was making repeated representations that it was doing and would do everything possible to secure these assets, then this case falls within the 'general rule of law that any act on the part of an indemnitee which materially increases the risk, or prejudices the rights, of the indemnitor, will discharge the indemnitor under the contract of indemnity.' United States Fidelity & Guaranty Co. v. Putfark, 1934, 180 La. 893, 158 So. 9, 10."

In Denton v. Fireman's Fund Ind. Co. 352 F. 2d 95, 99 (10 Cir. 1965), the court said:

"* * * [Any act of the principal] which increases the risk or prejudices the rights of the guarantor will operate to release his obligation at least to the extent of the prejudice."

See, also, United States Fire Ins. Co. v. Johansen, 270 Cal. App. 2d 824, 832, 76 Cal. Rptr. 174, 178 (1969).

In Wolthausen v. Trimpert, 93 Conn. 260, 269, 105 A. 687, 690 (1919), the Connecticut court said:

"* * * The duty of the indemnitee, in a contract to bear the loss the indemnitee may suffer on an account held by him against a third party, is, unless otherwise provided, to act in good faith and to use ordinary care * * *."

See, also, General Ins. Co. of America v. Fleeger, 389 F. 2d 159

(5 Cir. 1968) ; Seaboard Surety Company v. Dale Const. Co. 230 F. 2d 625 (1 Cir. 1956) ; Central Surety & Ins. Corp. v. Hinton, 233 Mo. App. 1218, 130 S. W. 2d 235 (1939).

This court in Elk River Concrete Products Co. v. American Cas. Co. 268 Minn. 284, 292, 129 N. W. 2d 309, 315 (1964), had occasion to examine the activities of a surety in relation to the indemnitor on a construction bond and found that the surety had not acted in a manner to prejudice the indemnitor's rights so as to release his obligation as an indemnitor. But it reasonably follows that if a surety were to act so as to prejudice an indemnitor's rights, the indemnitor would be released.

We adopt this rule and hold that an indemnitee owes a duty of good faith to its indemnitor and that any act of the indemnitee which prejudices the rights of the indemnitor will release his obligation to the extent of the prejudice.[4]

---

[4] Since this duty of "good faith" on the part of the indemnitee is basic, it cannot be waived by contractual agreement between the parties. This court has recognized that in the interest of public policy, certain basic rights in an indemnitor-indemnitee relationship cannot be subject to waiver by agreement. Fidelity & Cas. Co. v. Eickhoff, 63 Minn. 170, 65 N. W. 351 (1895). In that case the court concerned itself with a contract which provided that "vouchers" showing the indemnitee had paid out money based on the surety contract would be conclusive evidence as to the fact and extent of liability over from the indemnitor (the employee who was covered under the fidelity bond). Mr. Justice Mitchell said for the court (63 Minn. 178, 65 N. W. 352):

"* * * The right of a party to waive the protection of the law is subject to the control of public policy, which cannot be set aside or contravened by any arrangement or agreement of the parties, however expressed. * * * In the present case the attempt is to provide that, after the alleged cause of action has accrued, the plaintiff shall be the sole judge of both its existence and extent. Such an agreement is clearly against public policy."

In a later case, Fidelity & Deposit Co. v. Davis, 129 Kan. 790, 284 P. 430 (1930), the Kansas Supreme Court approved the decision in Eickhoff, with extensive citation of cases on both sides of the issue. But the thrust of the decision was that, since the indemnitor has no real "freedom to contract" in the area of fidelity bonds, he should not be permit-

Since the general rule here adopted had not been specifically extended to surety contracts prior to the present decision, the trial court could not have been expected to apply the standards we do in determining this case.

2. The trial court properly held in favor of the Barkers in the action by New Amsterdam on the Raymond school bond. There was no important factual dispute, and the trial court ably stated the facts as they were presented at trial. Where there are no material issues of fact, the case need not be submitted to a jury but can be decided by the trial court. Whisler v. Findeisen, 280 Minn. 454, 160 N. W. 2d 153 (1968).

"* * * Where there is evidence reasonably tending to sustain the findings of the trial court, such findings must be sustained." Taylor v. Allstate Ins. Co. 286 Minn. 449, 460, 176 N. W. 2d 266, 273 (1970).

"The function of a court of review is not to weigh the evidence as if trying the matter de novo, but to determine from an examination of the record if the evidence as a whole sustains the trial court's findings, and if it does so, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary. Furthermore, in considering the weight and sufficiency of the evidence, it is unnecessary for an appellate court to detail the evidence in order to demonstrate the absolute correctness of the trial court's findings of fact." Don Kral Inc. v. Lindstrom, 286 Minn. 37, 42, 173 N. W. 2d 921, 924 (1970).

As the findings and conclusions of the trial court concerning the Raymond school show, New Amsterdam, having taken possession of the assets of Lundquist Constructors, Inc., failed to take any steps to protect these assets; did not act on either of the two requests from Barker to preserve the assets; and did not act to advise the indemnitors that it would not seek to conserve any of the assets. New Amsterdam had no obligation to satisfy

ted to contract away certain basic rights, and public policy demands that these rights remain regardless of the contract provisions.

the first mortgage on the equipment of the corporation or to liquidate these assets to minimize the loss. Massachusetts Bonding & Ins. Co. v. Osborne, 233 Cal. App. 2d 648, 43 Cal. Rptr. 761 (1965). However, under its general obligation of good faith, it had a duty to advise the indemnitors that it did not intend to so do. An indemnitee cannot act with complete impunity toward assets which he has under his control, and which would be available to reduce the liability of the indemnitor. See, American Cas. Co. of Reading, Pa. v. Idaho First Nat. Bank, 328 F. 2d 138 (9 Cir. 1964) ; Boorstein v. Miller, 124 N. J. Eq. 526, 3 A. 2d 87 (1938) ; Crosby v. Woodbury, 37 Colo. 1, 89 P. 34 (1906); Restatement, Security, § 132. If proper notice is given, the indemnitor is placed in a position to protect these assets on his own behalf if he finds that economically advisable.

It would appear from the evidence that those claims of New Amsterdam on the Raymond school which were not barred by the statute of limitations did not exceed the equity of the assets of Lundquist Constructors, Inc., at the time they were taken over by New Amsterdam and used by its contractors. Since there is no real factual dispute, the findings of the trial court in this respect are justified by the evidence, and its judgment for the defendants is affirmed.

3. Turning next to the third-party action of New Amsterdam against defendants, we first examine the failure of New Amsterdam to communicate to defendants an offer of settlement made during the litigation commenced by Missouri Valley Steel Company to obtain payment for supplies it had furnished on the Fairmont job. There appears to be no specific Minnesota case dealing with the situation here involved. However, there are numerous cases involving failure of insurance companies to communicate to their insured offers of settlement within policy limits in accident cases where the claim exceeds the policy limits. We have held that an insurer has a duty to the insured to act in good faith in determining whether or not to accept an offer of settlement within the policy limits. Boerger v. American General

Ins. Co. 257 Minn. 72, 100 N. W. 2d 133 (1959); Peterson v. American Family Mutual Ins. Co. 280 Minn. 482, 160 N. W. 2d 541 (1968). In determining the good faith of the insurer, an important question is whether the insurer informed the insured of all proceedings, including communication of settlement offers. Larson v. Anchor Cas. Co. 249 Minn. 339, 352, 82 N. W. 2d 376, 384 (1957); 9B Dunnell, Dig. (3 ed.) § 4875c(19).

This rule is extended to surety agreements, and we hold that the indemnitee is required to communicate to the indemnitor all offers of settlement which affect the indemnitor's obligation to the indemnitee. In this case, it is undisputed that New Amsterdam failed to do this. It reserved to itself the prerogative of making a business judgment as to the reasonableness of accepting the offer of settlement. The indemnitee has the right to make such a business judgment but has the further obligation to allow the indemnitor to exercise the same business judgment on his own behalf. An indemnitee who fails to communicate to an indemnitor an offer of settlement is limited thereafter to recovering from the indemnitor the amount for which the claim could have been settled and, in all situations where attorneys' fees and costs are recoverable, to recover reasonable attorneys' fees and costs incurred only up to the time of the uncommunicated settlement offer. The indemnitee may not recover any interest on this amount since the indemnitor had no opportunity to exercise his judgment and pay the claim. In this case, there is no factual dispute to submit to a jury regarding the failure of the indemnitee to communicate the offer of settlement. Therefore, on retrial, the surety will be limited to a claim of $10,000, plus reasonable attorneys' fees and costs incurred to the time of the offer of settlement.

4.  An action based on an indemnity agreement is for the recovery of money based upon the promise to pay and is therefore triable by a jury. If fact issues exist with respect to the indemnity agreement, they are for the jury. Raymond Farmers Elev. Co. v. American Surety Co. 207 Minn. 117, 119, 290 N. W.

231, 233 (1940). In the instant case, there remain factual questions for a jury to consider. On the retrial of this case, the jury should consider any reasonable inferences which could be drawn from the meeting of the parties on July 18, 1960, at the Wilken Motel in Fairmont, to support the contention of Barker that New Amsterdam agreed not to proceed against him to obtain indemnity for its losses on the Lundquist projects in consideration of his protecting New Amsterdam from incurring liability on the Fairmont Cast Stone bonds and that there had been a new oral contract to terminate the prior indemnity contracts.[5]

In addition, the jury should consider what offset, if any, should be allowed defendants by reason of New Amsterdam's failure to notify Barker of the cancellation of the contract for deed on the real estate owned by Lundquist Constructors, Inc. Again New Amsterdam had no obligation to purchase this property. Massachusetts Bonding & Ins. Co. v. Osborne, *supra*. However, it owed a duty to the indemnitors against whom it proposed to proceed to allow them to make a business judgment to determine if it would be for their best interests to retain the property to minimize their loss.

Further, the jury should consider and determine if there was a breach of good faith on the part of New Amsterdam in failing to advise Barker of information it had in its possession regarding application of payments by Lundquist Constructors, Inc., to accounts of Lundquist existing prior to the incorporation. The jury should be allowed to consider the relationship of the parties, the availability of information to each, and what reliance, if any, defendant Lyle Barker was entitled to place on New Amsterdam

---

[5] It is well established that a written contract, not within the statute of frauds, may be modified by a subsequent oral contract. Enga v. Felland, 264 Minn. 67, 70, 117 N. W. 2d 787, 789 (1962); Mitchell v. Rende, 225 Minn. 145, 148, 30 N. W. 2d 27, 30 (1947); 4 Dunnell, Dig. (3 ed.) § 1774. This type of an indemnity agreement is not within the statute of frauds. Noyes v. Ostrom, 113 Minn. 111, 117, 129 N. W. 142, 145 (1910); Arant, *A Rationale for the Interpretation of the Statute of Frauds in Suretyship Cases,* 12 Minn. L. Rev. 716, 738.

regarding the financial condition of Lundquist Constructors, Inc.

The judgment entered on behalf of New Amsterdam in the third-party action against defendants Barker is hereby vacated and the matter remanded for a new trial in accordance with this opinion.

The judgment entered in Appeal No. 43054 is affirmed. The judgment entered in Appeal No. 43047 is reversed and the matter is remanded for a new trial in accordance with this opinion.

MR. JUSTICE MACLAUGHLIN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.