**AGRI CREDIT CORPORATION,**
**Respondent,**

v.

**Raleigh LIEDMAN, Appellant.**

**No. C7–82–1523.**

Supreme Court of Minnesota.

Aug. 12, 1983.

John E. Mack, New London, for appellant.

Donald M. Spilseth, Willmar, for respondent.

KELLEY, Justice.

In this action to collect unpaid amounts due on two promissory notes, the debtor, appellant Raleigh Liedman, appeals from a judgment entered against him and from an order denying him a new trial. In the judgment, the trial court awarded respondent $23,850 in attorney fees. The court relied heavily on an Eighth Judicial District "policy" of establishing amounts of allowance of attorney fees in default collection actions,[1] but also considered future difficulties the creditor might experience in effectuating collection of the judgment. We find the attorney fees awarded to be unreasonable for the amount of work done by the creditor's attorneys to the date of the judgment, and that the terms of the notes and Line of Credit Agreements signed by the parties as part of the transaction permit attorney fees to be recovered by the creditor only after they have been paid or incurred. Therefore, we reverse.

Appellant Liedman executed two promissory notes in favor of respondent Agri Credit Corporation in order to finance his farming operation. Simultaneously with the signing of each promissory note, appellant signed a Line of Credit Agreement. Both promissory notes contained promises by appellant that he would pay all costs of collection "including * * * reasonable attorneys' fees, *paid or incurred* by the Lender." Both Line of Credit Agreements contained substantially the same provision. Appellant Liedman defaulted on the note payments to Agri Credit. Agri Credit then commenced this action.

---

1. By order dated October 11, 1979, the Eighth Judicial District set a policy for attorney fees in default collections. That policy provided the creditor would receive attorney fees based on 25% of the first $500, 20% of the second $500 and 15% of any excess over $1,000. Computed according to that schedule, the attorney fees allowed to the creditor in this case amount to exactly $23,850.

Following limited discovery, respondent Agri Credit moved for summary judgment, which was granted by the trial court in the amount of $158,500. The trial court also awarded respondent attorney fees in the amount of $23,850. Appellant moved for a new trial, primarily claiming the award of attorney fees was excessive. In a memorandum attached to the order denying the motion for new trial, the trial court indicated that the allowed fees were computed pursuant to the schedule of allowable fees adopted by the judges of the Eighth Judicial District, but further indicated that it had considered that respondent would incur "substantial difficulty" in collecting the indebtedness because of the appellant's insolvency and possible litigation over alleged fraudulent conveyances by the appellant Liedman. On appeal, it is here claimed that the district court inappropriately applied the Eighth Judicial District fee policy, and that the attorney fees award is unreasonable when proper factors for determining attorney fees in note collection cases are considered.

◼ Attorney fee policies such as the one adopted by the Eighth Judicial District have never been considered by us as determinative of the attorney fees a creditor may collect in suit upon notes or contracts containing attorney fee clauses, but rather, such schedules have been considered only as a guideline in setting such attorney fees. *O'Donnell v. McGee Trucks, Inc.,* 294 Minn. 110, 113, 199 N.W.2d 432, 434 (1972). Factors other than such schedules must also be considered by the court, as we stated in *Obraske v. Woody,* 294 Minn. 105, 109–10, 199 N.W.2d 429, 432 (1972):

> [I]t would be helpful to the trial court, and to this court on appeal, to have, if possible, in addition to a recitation of the services performed and to be performed in the future, testimony regarding the time consumed by the attorney in performing his services or such other probative evidence as may assist the trial court in arriving at a fair and reasonable fee. The trial court may also take into consideration such factors as the ability and experience of the attorneys involved, the amount involved, the responsibilities assumed by the attorneys in the case, and the results obtained.

(citations omitted). In the instant case, the district court considered some of the factors mentioned in *O'Donnell* and *Obraske. See also Vandeputte v. Soderholm,* 298 Minn. 505, 216 N.W.2d 144 (1974). Nevertheless, as the court explained in its memorandum, the award of attorney fees was primarily based upon the Eighth Judicial District schedule and gave but limited consideration to the other factors.

◼ Up to the time of the judgment (or hearing on the motion for new trial), respondent's attorneys drafted a complaint, appeared in court for about 30 minutes on the summary judgment motion, took a 1-hour deposition, made telephone calls and prepared motion papers, orders and judgment papers. In our view, the attorney fees awarded should have encompassed the reasonable value of those services, considering all of the stated factors set forth in *Obraske.* Apparently, the trial court relied upon *O'Donnell* in setting the fee by opining that the collection proceedings of the judgment would be difficult and that an action to set aside an alleged fraudulent conveyance was possible. In *O'Donnell,* however, the debtor had contracted "to pay the reasonable cost of such collection, including attorneys' fees." 294 Minn. at 111, 199 N.W.2d at 433. The promissory note in *O'Donnell* made no mention of reimbursement or of fees "paid or incurred." The debtor in *O'Donnell* challenged the allowed fees on the ground that the trial court relied upon the then-existing Hennepin County Bar Association minimum fee schedule. The trial court there, however, indicated that it had considered the future difficulty of collection. In *O'Donnell,* the debtor made no challenge to fees awarded for possible future representation of the creditor in collecting the judgment.

On the other hand, in the instant case the parties contracted that Liedman would pay attorney fees "paid or incurred" by the creditor. The language of each note and of

each Line of Credit Agreement provides for reimbursement of collection expenses including attorney fees on demand, not for prepayment of attorney fees which may or may not be incurred by the creditor in the future. We therefore conclude that under the language of the contracts between these parties, an advance award of attorney fees in anticipation of future services or litigation, which may never occur, is unreasonable. Respondent Agri Credit, should it incur further attorney fees and expenses in attempting to collect the judgment or in attempting to set aside any alleged fraudulent conveyance, would not be barred from seeking reimbursement when such fees have been incurred or paid by it.

Inasmuch as we have determined that such estimated future attorney fees should not have been considered by the trial court in making its award of attorney fees in the judgment below, we next examine the attorney fees in light of the work done by the respondent's attorneys up to the time of entry of judgment. Applying our estimate of 15 hours of service, such examination shows that the attorney fees awarded amounted to more than $1,500 an hour for services rendered by respondent's attorneys up to the time of the denial of the new trial motion. It seems clear to us that the trial court's award is patently unreasonable. Accordingly, we reverse and remand to the district court for a determination of reasonable collection costs, including attorney fees, "incurred or paid" by respondent to its attorneys up to the time of the determination on the motion for new trial. In so doing, the court should consider the factors set forth in *Obraske* and should not rely upon the Eighth Judicial District's policy for setting attorney fees.

Reversed and remanded.