UNITED PRAIRIE BANK–MOUNTAIN LAKE, Respondent,

v.

HAUGEN NUTRITION & EQUIPMENT, LLC, et al., Appellants.

No. A09–0607.

Supreme Court of Minnesota.

March 14, 2012.

Rehearing Denied April 13, 2012.

---

Samuel L. Hanson, Charles B. Rogers, Jason R. Asmus, Briggs and Morgan, P.A., Minneapolis, MN, for respondent.

John E. Mack, Mack & Daby, P.A., New London, MN, for appellants.

OPINION

STRAS, Justice.

The question presented by this case is whether the Minnesota Constitution provides the right to a jury trial for a claim to recover attorney fees based on a contract.

In 2004, appellants Leland Haugen, Ilene Haugen, and Haugen Nutrition and Equipment, LLC ("HNE"), defaulted on promissory notes held by respondent United Prairie Bank–Mountain Lake ("UPB"). The various loan agreements between the parties contained provisions in which appellants agreed to pay UPB's reasonable costs and attorney fees associated with the protection of UPB's security interests and the enforcement of appellants' obligation to repay the loans. The district court denied appellants' motion to submit the question of reasonable attorney fees to the jury and subsequently awarded UPB over $400,000 in attorney fees. The court of appeals affirmed, holding that UPB's claim for the recovery of attorney fees was equitable in nature and thus did not give rise to a jury trial right under the Minnesota Constitution. Because we conclude that appellants are constitutionally entitled to a jury determination on UPB's claim for attorney fees, we reverse in part and remand for further proceedings.

## I.

Leland and Ilene Haugen owned two parcels of land in Cottonwood County, Minnesota, on which they farmed and operated a feed mill business. In 2002, the Haugens began to experience financial difficulties that affected their ability to make timely payments on their loans. UPB agreed to refinance the Haugens' debt and the parties devised a plan that involved transferring the Haugens' assets to an unrelated third party, Mark Sahli, and then forming a new entity, HNE, to purchase the assets from Sahli under a contract for deed.

The Haugens and HNE borrowed a total of $323,484.82 from UPB to complete the various transactions. UPB secured the loans with a mortgage on the two parcels of land in Cottonwood County,

commercial security agreements, and personal guarantees executed by the Haugens. The promissory notes accompanying each of the new loans obligated the Haugens and HNE to "pay all costs of collection, replevin ... or any other or similar type of cost." The notes further stated: "[I]f you hire an attorney to collect this note, I will pay attorney's fees plus court costs (except where prohibited by law)." The mortgage required HNE to pay "attorneys' fees, court costs, and other legal expenses" that were "incurred by [UPB] in enforcing or protecting [UPB]'s rights and remedies under this Mortgage." The commercial security agreements provided that, in the event UPB repossessed the secured property or took action to enforce the obligations of HNE, UPB could apply any proceeds recovered to the "expenses of enforcement, which includes reasonable attorneys' fees and legal expenses." Finally, in the personal guarantees, the Haugens agreed to pay "all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by [UPB] in connection with the protection, defense or enforcement of [these guarantees] in any litigation or bankruptcy or insolvency proceedings."

In December 2003, Meadowland Farmers Coop, which held a judgment against Leland Haugen and another company owned by the Haugens, brought an action against, among others, the Haugens, HNE, Sahli, and UPB challenging the transactions between those parties as fraudulent transfers. UPB incurred $117,110.24 in legal fees defending the action before the defendants settled with Meadowland.

On November 17, 2004, UPB notified HNE that it was in default on one of the promissory notes, which resulted in HNE's default under each of the notes. Neither HNE nor the Haugens responded to

UPB's default notice. On May 2, 2005, UPB brought the present action, asserting a number of claims, including the right to collect the amounts due under the promissory notes. UPB's amended complaint included two claims for breach of contract, one against the Haugens and HNE as "borrowers" for breach of the loan documents, and the other against the Haugens as "guarantors" for breach of their personal guaranties. In the prayer for relief, UPB sought a number of remedies, including a judgment "[a]warding damages, including all accrued interest, charges and reasonable attorneys' fees and costs ... in an amount to be determined at trial." Haugen and HNE responded by asserting ten counterclaims, each of which the district court eventually dismissed.

The district court denied appellants' request for a jury determination regarding the amount of attorney fees sought by UPB. Following a 2–day trial, the court entered judgment against appellants and awarded UPB $403,821.82 in attorney fees. The court awarded $286,711.58 to UPB for its attorney fees incurred in this case[1] and another $117,110.24 for attorney fees incurred by UPB in defending the Meadowland lawsuit. The court subsequently denied appellants' post-trial motion for a new trial or amended findings on attorney fees, concluding that appellants were not constitutionally entitled to a jury determination on attorney fees because the calculation of such fees was "a question of fact within the discretion of the district court." The court of appeals affirmed. *United Prairie Bank–Mountain Lake v. Haugen Nutrition & Equip., LLC*, 782 N.W.2d 263 (Minn.App.2010). We granted appellants' petition for review.

## II.

The question in this case is whether the Minnesota Constitution provides a right to a jury trial for a claim to recover attorney fees based on a contract. The interpretation and application of the Minnesota Constitution is a legal question that is reviewed de novo. *Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 148 (Minn.2001).

Article I, Section 4 of the Minnesota Constitution states that "[t]he right of trial by jury shall remain inviolate, and shall extend to all cases *at law* without regard to the amount in controversy." Minn. Const. art. I, § 4 (emphasis added). "This provision is intended to continue, unimpaired and inviolate, the right to trial by jury as it existed in the Territory of Minnesota when [the Minnesota Constitution] was adopted in 1857." *Abraham v. Cnty. of Hennepin*, 639 N.W.2d 342, 348 (Minn.2002). A party is therefore constitutionally entitled to a trial by jury "if a party raising that same theory for relief at the time the Minnesota Constitution was adopted also would have been entitled to a jury trial." *Olson*, 628 N.W.2d at 149. Alternatively, "if that same type of action did not entitle a party to a jury trial at the time the Minnesota Constitution was adopted," then the Minnesota Constitution does not recognize a right to a jury trial today. *Id.*

However, Article I, Section 4 does not freeze the right to a jury trial to only those causes of action that existed in 1857. *See Abraham*, 639 N.W.2d at 349. Instead, our case law requires us to analyze current causes of action and pleading practices in the context of the theories of

---

1. UPB's complaint in this case also alleged that the contract for deed between Sahli and HNE on the two Cottonwood parcels constituted an equitable mortgage. The district court did not award UPB attorney fees for litigating the equitable mortgage issue because the court could not identify a contractual basis for doing so.

relief available in, and the jurisprudence of, the 1850s. *See Olson,* 628 N.W.2d at 149. The focus of the inquiry therefore depends "on whether Minnesota's territorial courts guaranteed the right to a jury trial in the *type* of action" pled in a complaint. *Id.* (emphasis added). The answer to that question depends, in turn, on whether the claim in the complaint is an "action[ ] at law, for which the constitution guarantees a right to jury trial, [or an] action[ ] in equity, for which there is no constitutional right to jury trial." *Abraham,* 639 N.W.2d at 349. If the action is one at law, "either party may demand a jury trial." *Olson,* 628 N.W.2d at 149 (quoting *Morton Brick & Tile Co. v. Sodergren,* 130 Minn. 252, 254, 153 N.W. 527, 528 (1915)).

Two cases are illustrative of our approach in determining the nature and character of a cause of action. In *Olson,* we considered whether a constitutional right to a jury trial existed for a claim of promissory estoppel. 628 N.W.2d at 149–53. Although a separate, independent claim for promissory estoppel did not exist in 1857, we traced the origins of the doctrine to the English chancery courts. *Id.* at 149–50. After tracing its history, we ultimately concluded that the "equitable cause of action based on good-faith reliance forms the roots of our modern doctrine of promissory estoppel." *Id.* at 152. In concluding that a jury trial was not required, we examined the nature and character of the cause of action by examining the pleadings and the elements of plaintiff's promissory estoppel claim. *Id.* at 152–53.

*Abraham,* decided less than a year after *Olson,* further described how to determine the "nature and character of the controversy" for purposes of Article I, Section 4 of the Minnesota Constitution. 639 N.W.2d at 349. Rather than focusing solely on the elements necessary for proving violations of the Whistleblower Act and the Minnesota Occupational Safety and Health Act—statutory actions that were unavailable in 1857—we also examined the nature of the relief sought by the plaintiff. *Id. Abraham* therefore engaged in a two-step inquiry to determine whether a jury trial right existed for the type of action advanced by the plaintiff. First, *Abraham* discussed the historical origins of wrongful discharge claims to as early as 1861, concluding that claims of retaliatory discharge, a subcategory of wrongful discharge claims, sounded in tort. *See id.* at 350–53. Second, *Abraham* investigated the nature of the relief sought by the plaintiff and held that a tort action seeking only money damages is a legal claim with an attendant right to a jury trial under the Minnesota Constitution. *See id.* at 353–54.

Under *Olson* and *Abraham,* the right to a jury trial depends on the "nature and character of the controversy as determined from all the pleadings." *Abraham,* 639 N.W.2d at 353. In determining the nature and character of the controversy, we consider the substance of the claim, based on the pleadings and the underlying elements of the claim, and "the nature of the relief sought." *Id.* If the nature and character of UPB's claim for the recovery of attorney fees is legal, then the appellants are entitled to a jury trial. If not, then the district court was not required to grant the appellants' demand for a jury trial.

## A.

We first assess the substantive nature of UPB's claim for attorney fees based on the pleadings and the underlying elements of the cause of action. UPB alleged in its amended complaint that the Haugens and HNE breached their contracts, and as a result, UPB was entitled

to recover the total indebtedness, "plus all additional accrued interest, charges and reasonable attorneys' fees and costs." UPB's claim for attorney fees therefore arises from the contracts between the parties, specifically the promissory notes, the security agreements, the mortgage, and the personal guarantees (collectively, the "Loan Documents").

Although we have not identified any cases from the territorial period involving claims for attorney fees arising under a contract, our early cases reveal that parties have used contractual provisions like those at issue here since at least 1858. *See Griswold v. Taylor*, 8 Minn. 342 (Gil. 301) (1863); *see also Jones v. Radatz*, 27 Minn. 240, 241–42, 6 N.W. 800, 800 (1880) (stating that a provision in a promissory note allowing the recovery of attorney fees by the lender was "part of the contract and obligation of the maker, on which the suit [was] brought"). In *Griswold*, a mortgage executed in 1858 provided for the lender's recovery of $50 as attorney fees in the event of foreclosure. 8 Minn. at 342–44 (Gil. at 301–04). We upheld the attorney fees provision in the mortgage, describing it as a "stipulation which will *save the mortgagee harmless* in the event of a forced collection." *Id.* at 344 (Gil. at 304) (emphasis added). In doing so, we relied on a Wisconsin case that characterized a similar attorney fees provision as " 'an *indemnity* for the necessary expenses of foreclosure.' " *Id.* at 345 (Gil. at 305) (emphasis added) (quoting *Tallman v. Truesdell*, 3 Wis. 443, 454 (1854)).

Like the mortgage in *Griswold*, the Loan Documents in this case obligate appellants to hold UPB harmless from the costs of enforcing appellants' obligation to repay the loans, as well as the costs of protecting the security underlying those loans. In this case, UPB has brought an action to recover those costs, including its

reasonable attorney fees. As we implied in *Griswold*, the substantive nature of this type of claim is one for contractual indemnity. *See also* 1 Dan B. Dobbs, *Law of Remedies* § 3.10(3), at 402 (2d ed.1993) (stating that "[c]ontracting parties often provide that one of the parties will protect the other from litigation costs" and identifying such agreements as contractual indemnification provisions). Although *Griswold* did not address whether a jury trial is required for claims of contractual indemnity, we have concluded in other cases that an action for contractual indemnity is an action at law that gives rise to a jury trial right. For instance, in *New Amsterdam Casualty Co. v. Lundquist*, we stated: "[a]n action based on an indemnity agreement is for the recovery of money based upon the promise to pay and is therefore triable by a jury. If fact issues exist with respect to the indemnity agreement, they are for the jury." 293 Minn. 274, 287, 198 N.W.2d 543, 551 (1972).

Similarly, in *Raymond Farmers Elevator Co. v. American Surety Co. of New York*, we differentiated between an action by an employer against a former employee who embezzled funds and converted flour and grain and an action by the employer against a surety that agreed to reimburse the employer under a surety bond for losses from the fraudulent or dishonest actions of the employee. 207 Minn. 117, 118–19, 290 N.W. 231, 232–33 (1940). Midway through the trial of the case, the district court dismissed the jury. *Id.* at 119, 290 N.W. at 233. On appeal, the question was whether the district court erred in deciding the issues in the case without a jury. *Id.* at 119, 290 N.W. at 233. With regard to the claim against the employee, the complaint sought a money judgment based on an accounting. *Id.* at 119, 290 N.W. at 233. We held that such an action was equitable, and the employee

therefore had no right to a jury trial. *Id.* at 119, 290 N.W. at 233. In contrast, the suit against the surety on the contract was subject to trial by a jury because it was "an action for the recovery of money based upon [a] promise to pay."[2] *Id.* at 119, 290 N.W. at 233; *see also Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 477, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962) ("As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.").

Like the claims at issue in *Raymond* and *New Amsterdam,* the substantive nature of UPB's claim for the recovery of attorney fees is an action for contractual indemnity, which we have traditionally classified as an action at law.

### B.

The second consideration in determining whether a jury trial is required under Article I, Section 4 of the Minnesota Constitution is the nature of the remedy sought. *See Abraham,* 639 N.W.2d at 353. As stated above, UPB seeks the recovery of attorney fees, which is essentially a form of money damages for the appellants' breach of the Loan Documents. Indeed, the claim for contractual indemnification in *New Amsterdam* included the recovery of attorney fees, and we did not distinguish between the claim for attorney fees and other issues for the jury on retrial. 293 Minn. at 287, 198 N.W.2d at 551. The reason, we stated, is that an action for contractual indemnity "is for the recovery of money." *Id.* at 287, 198 N.W.2d at 551; *see also Simler v. Conner,* 372 U.S. 221, 223, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) ("The case was in its basic character a suit to determine and adjudicate the amount of fees owing to a lawyer by a client under a contingent fee retainer contract, a traditionally "legal" action.... The questions involved are traditional common-law issues which can be and should have been submitted to a jury...." (citations omitted)); *Raymond,* 207 Minn. at 119, 290 N.W. at 233 ("A suit against a surety on the contract is an action for the *recovery of money* based upon the promise to pay." (emphasis added)).

---

**2.** Indemnity can be equitable when the obligation of one party to indemnify the other arises from principles of equity and fairness, rather than a contractual obligation. *See City of Willmar v. Short–Elliott–Hendrickson, Inc.,* 512 N.W.2d 872, 874 (Minn.1994) (stating that indemnity may be available when "a party fails to discover or prevent another's fault and, consequently, pays damages for which the other party is primarily liable"); *Zontelli & Sons, Inc. v. City of Nashwauk,* 373 N.W.2d 744, 755 (Minn.1985) (explaining that a party is entitled to indemnification for its liability " '[w]here the one seeking indemnity has incurred liability because of a breach of duty owed to him by the one sought to be charged' " (quoting *Tolbert v. Gerber Indus., Inc.,* 255 N.W.2d 362, 366 (Minn.1977))); *Hendrickson v. Minn. Power & Light Co.,* 258 Minn. 368, 371, 104 N.W.2d 843, 847 (1960) (stating that "indemnity is appropriate where one party has a primary or greater liability or duty which justly requires him to bear the whole of the burden as between the parties"),

overruled on other grounds by Tolbert, 255 N.W.2d 362.

In the context of the Minnesota No–Fault Automobile Insurance Act, for example, we have held that a statute permitting the recovery of economic loss benefits from insurers of commercial vehicles in certain circumstances was a type of equitable indemnification. *See Nat'l Indem. Co. v. Mut. Serv. Cas. Co.,* 311 N.W.2d 856, 858 (Minn.1981) (applying Minn. Stat. § 65B.53, subd. 1 (1978)). We need not and do not address the question of whether other statutory indemnity claims, including those for attorney fees, are subject to a jury trial under Article I, Section 4 of the Minnesota Constitution, other than to note that, like *National Indemnity,* such claims can involve different considerations than those present in this case. *See also Blanchard v. Bergeron,* 489 U.S. 87, 91, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (noting that attorney fees under 42 U.S.C. § 1988 may be awarded to a "prevailing party" as costs in the court's discretion).

■ In other controversies involving a contractual obligation to pay, we have concluded that a request for the recovery of money is a legal claim with an attendant right to a jury trial. In *Landgraf v. Ellsworth*, for example, we considered whether a jury trial was required for an action by a former employee to recover commissions under a written agreement from his former employer. *See* 267 Minn. 323, 324–26, 126 N.W.2d 766, 767–68 (1964). We held that a jury trial was required under Article I, Section 4 of the Minnesota Constitution. *See id.* at 329, 126 N.W.2d at 770. In so holding, we stated that a "suit on a contract for the recovery of money is a legal action triable to a jury," even though the plaintiff's complaint cast his claim as one for an equitable accounting rather than money damages.[3] *See id.* at 327, 126 N.W.2d at 768; *see also id.* at 328, 126 N.W.2d at 769 (" '[W]e think it plain that their claim for a money judgment is a

claim wholly legal in its nature however the complaint is construed. As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character.' " (quoting *Dairy Queen*, 369 U.S. at 477, 82 S.Ct. 894)).

■ Similar to *Landgraf*, UPB's complaint seeks the recovery of money based on a contractual obligation to pay. Even though the plaintiff in *Landgraf* sought the recovery of monetary commissions for sales rather than the recovery of attorney fees, we do not believe such a distinction is significant, particularly when the contractual indemnification claim eligible for a jury trial in *New Amsterdam* also included attorney fees. Accordingly, we conclude that a claim for a monetary payment under a contractual indemnity provision is a legal claim with an attendant right to a jury trial under Article I, Section 4 of the Minnesota Constitution.

3. The remedy of equitable accounting is available primarily in two circumstances not applicable here: when a fiduciary owes an equitable duty to account and when the accounts at issue are exceedingly complicated. *See Dobbs, supra*, § 2.6(3), at 158. No fiduciary relationship exists in the typical contractual attorney fees claim, and the issues concerning an award of attorney fees are not so complicated " 'that only a court of equity can satisfactorily unravel them.' " *Landgraf*, 267 Minn. at 328, 126 N.W.2d at 769 (quoting *Dairy Queen*, 369 U.S. at 477, 82 S.Ct. 894); *see also Dairy Queen*, 369 U.S. at 477, 82 S.Ct. 894 (noting that few accounts are so complex as to require an equitable accounting); *Landgraf*, 267 Minn. at 327, 126 N.W.2d at 768 ("A suit on a contract for the recovery of money is a legal action triable to a jury, and the mere fact that there is an accounting incidental to the main action does not destroy the nature of the action or deprive a party of a jury trial." (footnote omitted)).

Several of the cases cited by the dissent conclude that awards of attorney fees are equivalent to an equitable accounting, but fail to explain or support such a conclusion. *See McGuire v. Russell Miller, Inc.*, 1 F.3d 1306,

1314 (2d Cir.1993) ("[W]e hold that an action to recover attorneys' fees pursuant to a contract presents traditional common-law contract issues which should be submitted to a jury—and which were properly submitted to the jury in this case—but that the subsequent determination of the amount of attorneys' fees owed presents equitable issues of accounting which do not engage a Seventh Amendment right to a jury trial."); *Paramount Commc'ns Inc. v. Horsehead Indus., Inc.*, 287 A.D.2d 345, 731 N.Y.S.2d 433, 434 (N.Y.App.Div. 2001) ("The amount of, if not the right to, attorneys' fees raises post-judgment issues collateral to the merits in the nature of an accounting that are essentially equitable in nature."); *Murphy v. Stowe Club Highlands*, 171 Vt. 144, 761 A.2d 688, 701 (2000) (holding that an award of attorney fees under a contract involves an equitable accounting). We decline to conclude that an award of attorney fees involves an equitable accounting when our review of the equitable principles and case law underlying the remedy of equitable accounting indicates otherwise and none of the cases identified by the dissent provides anything more than a bare, conclusory statement to support such an analogy.

## C.

In reaching a contrary decision, the court of appeals articulated three reasons for its conclusion that UPB's claim for the recovery of attorney fees was equitable. First, the court stated that the claim is "more like a claim for restitution than for compensation." *UPB*, 782 N.W.2d at 271. Second, the court stated that the claim is "akin to a request for specific performance of a contract." *Id.* Finally, the court concluded that the claim for attorney fees is "collateral" to the merits of the action. *Id.* We disagree with each of the grounds relied upon by the court of appeals.

First, the court of appeals analogized UPB's claim for the recovery of attorney fees to a restitutionary claim for reimbursement. *Id.* Although we agree that UPB seeks reimbursement for its attorney fees, there are two problems with the court of appeals' analogy.

 The most fundamental problem is that restitution is not the basis for the reimbursement sought by UPB in this case. Restitution prevents the unjust enrichment of the defendant at the plaintiff's expense. *See Dobbs, supra*, § 4.1(1), at 551–52 ("[R]estitution claims are bound by a major unifying thread. Their purpose is to prevent the defendant's unjust enrichment by recapturing the gains the defendant secured in a transaction." (footnote omitted)); *see also Randall v. Constans*, 33 Minn. 329, 337–38, 23 N.W. 530, 534 (1885) (holding that a plaintiff may seek restitution against a defendant who was unjustly enriched). In general, therefore, restitution is based on a benefit that has been conferred on the defendant, rather than a loss incurred by the plaintiff. *See Dobbs, supra*, § 4.1(1), at 555 ("Restitution measures the remedy by the defendant's gain and seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the reme-

dy by the plaintiff's loss and seeks to provide compensation for that loss." (footnote omitted)). In this case, an award of attorney fees would not require the Haugens or HNE to divest themselves of a benefit they received, but would instead compensate UPB for the loss it incurred— *i.e.*, the attorney fees expended as a result of appellants' breach of the Loan Documents. Consequently, UPB's claim for the recovery of attorney fees cannot be characterized as restitution.

Another problem with identifying the remedy sought here as restitution, and therefore equitable, is that restitution was *not* exclusively an equitable remedy. "In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity." *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). When a restitution claim sought a judgment imposing personal liability on the defendant to pay a sum of money, it was considered legal, viewed essentially as an action for breach of contract. *Id.* at 213, 122 S.Ct. 708. We therefore do not agree with the court of appeals that the remedy sought by UPB in this case is a form of restitution, and even if it is a form of restitution, it is not equitable in nature.

Second, we disagree with the court of appeals' conclusion that UPB's claim is similar "to a request for specific performance of a contract, for which a jury trial is not required." *UPB*, 782 N.W.2d at 271 (citing *Indianhead Truck Line, Inc. v. Hvidsten Transp., Inc.*, 268 Minn. 176, 193, 128 N.W.2d 334, 346 (1964)). As an initial matter, "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was *not typically available*

in equity." [4] *Great–West Life*, 534 U.S. at 210–11, 122 S.Ct. 708. Additionally, our case law does not recognize the form of relief sought by UPB in this case as specific performance. In *Indianhead Truck Line*, we held that an award of interim money damages was a form of specific performance only because the contract between the parties was ongoing and in full force. *See* 268 Minn. at 192–93, 128 N.W.2d at 346 ("The award of interim damages . . . is not to be classed as an award of damages for breach of contract. On the contrary, the *basis of Indianhead's suit is that the contract remains in full force and effect and subject to performance.*" (emphasis added)). In this case, however, UPB does not seek the performance of an ongoing contract. Rather, UPB plainly and unambiguously alleged in its amended complaint that the Haugens and HNE defaulted on their obligations under the Loan Documents and therefore materially breached the contracts. Accordingly, UPB's claim for the recovery of attorney fees is not akin to a claim for specific performance.

■ Third, in distinguishing a case relied on by appellants, *Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102 (10th Cir. 2009), the court of appeals concluded that when "the substance of the contract claim is nonpayment of a promissory note, the damages directly caused by nonpayment is the balance due under the note: *the issue of fees is collateral.*" *UPB*, 782 N.W.2d at 271 (emphasis added). Yet, even if we were to assume that the collateral nature of a claim is relevant to determining whether a jury trial is required under the Minnesota Constitution (an assumption we are not prepared to make), the court of

appeals' conclusion is contrary to basic contract law principles and the specific allegations in UPB's amended complaint. Here, the payment of attorney fees under the circumstances delineated by the Loan Documents is a direct contractual obligation of the appellants, no different from appellants' obligation to pay accrued interest and principal under the promissory notes and mortgage. *See* Am. Compl. 14 (seeking an award of damages, "including all accrued interest, charges and reasonable attorneys' fees and costs"). When a party seeks attorney fees under the express provisions of a contract, the fees are an agreed element of damages available under the contract and are not collateral. *See Dobbs, supra,* § 3.10(3), at 402–03; *cf. Jones,* 27 Minn. at 242, 6 N.W. at 800 (rejecting the argument that a provision for recovery of attorney fees in a promissory note related only to the remedy and holding that the promise to pay attorney fees was "part of the contract and obligation of the maker"). And like other damages available for breach of contract, payment of the plaintiff's attorney fees reimburses the plaintiff for its loss and serves the purpose of making the plaintiff whole. *See Dobbs, supra,* § 1.1, at 3 ("The damages remedy is a money remedy aimed at making good the plaintiff's losses." (footnote omitted)). Therefore, even if a claim's collateral nature has constitutional significance for purposes of the jury trial right in Article I, Section 4 of the Minnesota Constitution, the court of appeals was wrong in concluding that UPB's claim for the recovery of attorney fees was collateral; UPB's claim for attorney fees derived from explicit obligations contained in the Loan Documents and was a direct consequence of appellants' breach.

4. Among the rare cases in which a court of equity would decree specific performance to transfer funds were those in which the court was trying to prevent future losses that were incalculable or would be greater than the sum awarded. *See Great–West Life,* 534 U.S. at 211, 122 S.Ct. 708. UPB's request for attorney fees does not fall into either category.

### D.

We also briefly address the court of appeals' conclusion that practical considerations—such as a court's expertise in deciding issues relating to attorney fees and the possible delay and inefficiencies of submitting the question of attorney fees to a jury—favor resolution of an attorney fees request by the court. *UPB*, 782 N.W.2d at 271. In considering the practical considerations of submitting an attorney fees claim to the jury, the court of appeals relied on a number of federal decisions, including *Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). *See UPB*, 782 N.W.2d at 269–70. In *Ross*, the Supreme Court stated: "our cases indicate, the 'legal' nature of an issue is determined by considering, first, the pre-merger custom [prior to the consolidation of courts of law and equity] with reference to such questions; second, the remedy sought; and, *third, the practical abilities and limitations of juries.*" 396 U.S. at 538 n. 10, 90 S.Ct. 733 (emphasis added). However, the Supreme Court has subsequently limited the applicability of the third *Ross* factor to a narrow set of circumstances that are inapplicable here. *See Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 565 n. 4, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) ("We recently noted that this consideration is relevant only to the determination 'whether Congress has permissibly entrusted the resolution of certain disputes to an administrative agency or specialized court of equity, and whether jury trials would impair the functioning of the legislative scheme.'" (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42 n. 4, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989))). Some federal courts have inexplicably continued to rely on the practical considerations mentioned in *Ross* in addressing the right to a jury trial under the Seventh Amendment to the United States Constitution. But we have never adopted the third factor of *Ross* in addressing the right to a jury trial under Article I, Section 4 of the Minnesota Constitution and decline to do so now. The availability of a constitutionally-guaranteed right to trial by jury does not and should not turn on the practical difficulties of its implementation. *Cf. United States v. Booker,* 543 U.S. 220, 243–44, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("We recognize, as we did in *Jones, Apprendi*, and *Blakely*, that in some cases jury factfinding may impair the most expedient and efficient sentencing of defendants. But the interest in fairness and reliability protected by the right to a jury trial—a common-law right that defendants enjoyed for centuries and that is now enshrined in the Sixth Amendment—has always outweighed the interest in concluding trials swiftly.").

### E.

The dissent does not adopt any of the grounds relied upon by the court of appeals. Nor does the dissent call into doubt our application of the two factors for assessing jury trial requests under *Abraham* and *Olson*. The dissent concedes that UPB bases its request for attorney fees on the breach of several contracts. The dissent also does not dispute that we have traditionally treated claims based on breach of contract as legal in nature and character.[5] And the dissent acknowledges

---

**5.** The dissent nonetheless asserts that, "[w]hile traditionally indemnity has been viewed as a right arising out of contract, we have clarified that the award of indemnity should follow traditional concepts of equity."

To be sure, indemnity can be equitable if the obligation to indemnify arises from principles of equity and fairness. *Hendrickson,* 258 Minn. at 370–71, 104 N.W.2d at 847. But, as we have held, "[a]n action based on an in-

that, under our case law, a request for the recovery of money is ordinarily a legal claim with an attendant right to a jury trial. Nevertheless, the dissent states that "[t]he contractual nature of the obligation to pay attorney fees is not determinative" and that "merely because an attorneys' fees claim can be quantified monetarily does not mean that it is 'legal' relief." Neither statement, standing alone, is incorrect. But considered together, the dissent's reasoning is flawed. To be sure, neither a claim's substantive nature nor the type of relief sought may be dispositive in any given case. But those are the *only* two factors we consider in evaluating a claim for a jury trial, *see Abraham*, 639 N.W.2d at 353, and *both* favor a trial by jury in this case.[6]

The dissent would conclude otherwise based on its view that "the recovery of attorney fees implicates traditional equitable principles." The dissent's argument, however, does not find support in our case law. We have stated that, in awarding attorney fees, courts should "arriv[e] at a fair and reasonable fee," *Agri Credit Corp. v. Liedman*, 337 N.W.2d 384, 386 (Minn. 1983) (internal quotation marks omitted), and award a "reasonable and just" amount, *Campbell v. Worman*, 58 Minn. 561, 565, 60 N.W. 668, 669 (1894). But merely using words like "fair" and "just" in conjunction with an award of attorney fees does not

transmogrify every request for attorney fees into an equitable claim. *See Cornfeldt v. Tongen*, 262 N.W.2d 684, 704 (Minn. 1977) (concluding the district court erred when it "invaded the province of the jury under Minn. St. 573.02 to determine a fair and just recovery" in a wrongful death action); *Rector, Wardens & Vestry of St. Christopher's Episcopal Church v. C.S. McCrossan, Inc.*, 306 Minn. 143, 146, 235 N.W.2d 609, 611 (1975) (stating that it is "for the jury to balance the[ ] elements of damages in arriving at a just and reasonable award" for the destruction of ornamental and shade trees in a tort action). To the contrary, what was "fair" in *Liedman* was the award of attorney fees paid or incurred—the amount promised by the parties' contract. *See* 337 N.W.2d at 385. Similarly, the "just" award in *Campbell* was an amount based on the attorney fees proven and incurred—the maximum amount permitted by law. *See* 58 Minn. at 564–65, 60 N.W. at 669. In neither case did we suggest that district courts may apply broad-ranging notions of fairness in order to satisfy the equities of the parties. Nor have we suggested that courts can decline to award attorney fees to which a party is otherwise contractually entitled, based on equitable considerations like the doctrine of unclean hands. Indeed, other than grasping at isolated references in our case law to notions of fairness and justice,

demnity agreement is for the recovery of money based upon the promise to pay and is therefore triable by a jury." *New Amsterdam*, 293 Minn. at 287, 198 N.W.2d at 551; *see also Raymond*, 207 Minn. at 119, 290 N.W. at 233 (characterizing a lawsuit against a surety based on a contract as an action for the recovery of money subject to a trial by jury). Far from introducing a "sea change" for Minnesota courts, as the dissent argues, we are merely applying our longstanding precedent—including *New Amsterdam* and *Raymond*—treating *contractual* indemnity claims as legal in nature and character.

**6.** The dissent is correct that we have denied a jury trial in two cases seeking the recovery of money related to a contract: one requesting an equitable accounting, *see Swanson v. Alworth*, 168 Minn. 84, 91, 209 N.W. 907, 909–10 (1926), and the other seeking specific performance, *see Indianhead Truck Line*, 268 Minn. at 192–94, 128 N.W.2d at 346–47. Even so, the dissent's observation is unhelpful because UPB is not requesting either specific performance or an equitable accounting in this case. Put another way, unlike *Swanson* and *Indianhead Truck Line*, this case simply does not involve an equitable remedy.

the dissent fails to classify UPB's request for attorney fees as akin to any particular equitable doctrine or remedy.

The dissent instead largely abandons our traditional framework under *Abraham*, and argues that a contractual claim for attorney fees is a "sui generis" matter for the court to decide, "akin to" a request for costs or disbursements. As a threshold matter, the dissent's reasoning is inconsistent with the plain language of Article I, Section 4 of the Minnesota Constitution, which does not contain an exception for "sui generis" matters. Rather, the language of Article I, Section 4 is categorical: "[t]he right of trial by jury shall remain inviolate, and *shall extend to all cases at law* without regard to the amount in controversy." Minn. Const. art. I, § 4 (emphasis added). It is thus not surprising that, of the two cases the dissent relies upon for treating attorney fees as sui generis, neither case presented the question of a litigant's constitutional right to a jury trial. Nor did either case express a preference for having the court, rather than a jury, decide the question of attorney fees.[7]

Moreover, in treating attorney fees as "akin to" costs and disbursements, the dissent's approach treats all requests for attorney fees identically, ignoring important distinctions between fee requests based on a statute and those based on a contract.[8] Statutory attorney fees often involve matters of public policy or equitable considerations that are not present in cases involving contractual indemnity provisions. *See, e.g.*, Minn.Stat. § 302A.473, subd. 8(b) (2010) (allowing, in actions to determine the rights of dissenting shareholders, the award of "all fees and expenses of any experts or attorneys as the court deems equitable"); *Ly v. Nystrom*, 615 N.W.2d

---

7. *First State Bank of Grand Rapids v. Utman* involved the question of whether a dispute about the value of attorney fees sought by the plaintiff under the terms of two promissory notes created a material dispute as to the validity of the defendant's underlying obligation to pay the notes. 136 Minn. 103, 105, 161 N.W. 398, 399 (1917). In deciding that the value of attorney fees was a distinct issue, we noted that attorney fees "do not accrue until the services are performed," and that at that point, "upon application to the court, their value may be determined." *Id.* at 105, 161 N.W. at 399. However, we did not decide in *Utman* whether the plaintiff was constitutionally entitled to a jury trial on his claim for attorney fees, nor did we mean to express a requirement that the court, and not a jury, must set their value. Similarly, *Campbell* addressed an issue other than the right to a jury trial: the right to the payment of attorney fees in the absence of proof of the value of the services rendered. 58 Minn. at 564–65, 60 N.W. at 668–69. Although we stated that recovery of attorney fees "can only be had upon application to the court, and upon proof of the reasonableness and value of the attorneys' fees," it was the failure of proof that was the focus of that case, *not* the identity of the fact-finder. *Id.* at 565, 60 N.W. at 669.

8. The dissent's conclusion that contractual attorney fees are equivalent to "costs and disbursements" is undermined by our decision in *Schwickert, Inc. v. Winnebago Seniors, Ltd.*, 680 N.W.2d 79, 87–88 (Minn.2004), in which we concluded that contractual attorney fees should *not* be treated as "costs and disbursements" for purposes of interpreting an offer of settlement under Minn. R. Civ. P. 68. *See* Minn. R. Civ. P. 68 (2008) (amended Feb. 29, 2008) ("At any time prior to 10 days before the trial begins, any party may serve upon an adverse party an offer ... to pay or accept a specified sum of money, *with costs and disbursements then accrued,* ....." (emphasis added)). In deciding whether to interpret the plaintiff's Rule 68 offer as including attorney fees, we drew a distinction between the *contractual* attorney fees at issue in that case and *statutory* attorney fees, which were included as costs and disbursements in a prior case. *See Schwickert*, 680 N.W.2d at 87 (citing *Collins v. Minn. Sch. of Bus., Inc.*, 655 N.W.2d 320, 329 (Minn.2003)). We then held that contractual attorney fees did *not* come within the "costs and disbursements" that the plaintiff was presumed to have offered in addition to the lump sum amount. *Id.* at 88.

302, 314 (Minn.2000) (holding that the court must consider whether the cause of action benefits the public in awarding attorney fees under the private attorney general statute). That distinction is significant because, under our framework for deciding the right to a jury trial under Article I, Section 4, the nature and character of the claim is dispositive. *See Abraham*, 639 N.W.2d at 349 ("The nature and character of the controversy, as determined from all the pleadings and by the relief sought, determines whether the cause of action is one at law ... and thus carries an attendant constitutional right to jury trial."). Here, UPB's claim, as determined from all the pleadings, is one for contractual indemnity, and UPB requests money damages in the form of attorney fees as relief. Under our precedent, we cannot disregard the clear import of those conclusions: UPB's request for attorney fees is a legal claim with an attendant right to a jury trial under Article I, Section 4 of the Minnesota Constitution.

### III.

■ For the foregoing reasons, we conclude that UPB's claim for the recovery of attorney fees is legal rather than equitable because it is an action seeking a monetary payment for contractual indemnity. Because the nature of the claim is contractual and the remedy sought is legal, we hold that appellants are entitled to a jury trial on attorney fees under Article I, Section 4 of the Minnesota Constitution.[9] We therefore reverse the court of appeals and remand to the district court for redetermination of UPB's attorney fees claim consistent with appellants' right to a jury trial.[10]

Reversed in part and remanded.

DIETZEN, Justice (dissenting).

I respectfully dissent. I disagree with the court's conclusion that Haugen Nutrition & Equipment, LLC and Leland and Ilene Haugen (collectively, HNE) are constitutionally entitled to a jury trial on the attorney fees claim of United Prairie Bank. The majority's decision represents a dramatic sea change for Minnesota courts and casts Minnesota as an outlier among jurisdictions that have considered this issue. Relying on our prior treatment of attorney fees, I conclude that the bank's claim for attorney fees is most closely analogous to a claim for costs or disburse-

9. In reaching the conclusion that a jury trial is required for UPB's claim for the recovery of attorney fees, we do not distinguish between the predicate determination of appellants' liability for attorney fees and the amount of the fees awarded as damages. As with any other legal claim subject to a jury trial, a jury determines both the liability for a breach of contract and the amount of damages to award for the breach, if any, assuming genuine issues of material fact exist with respect to both questions that warrant submission to a jury.

We express no opinion, however, about the specific procedural or timing requirements for submission of a contractual attorney fees claim to a jury. In this case, the parties have asked us to decide only whether the Minnesota Constitution provides a jury trial right for a claim involving a contractual right to attorney

fees. We therefore decline to speculate about issues beyond those presented for our review.

10. Because we remand for redetermination of UPB's claim for the recovery of attorney fees, we need not address any of the other arguments raised by appellants with respect to the reasonableness of the initial award of attorney fees by the district court. However, we note that the court of appeals' resolution of issues unrelated to UPB's claim for the recovery of attorney fees, such as the dismissal of appellants' counterclaims and the affirmance of the award of funds deposited with the district court to UPB, are not affected by this remand because they were not raised in appellants' petition for review. *See State v. Koppi*, 798 N.W.2d 358, 366 (Minn.2011) (declining to address an issue that was not raised in the petition for review).

ments, which does not implicate the right to a jury trial under the Minnesota Constitution. To explain my dissent, I examine the constitutional right to a jury trial, the nature of the bank's claim for attorney fees, and our relevant case law, and then apply those principles to the claim here.

## I.

The Minnesota Constitution provides that the right to a jury trial "shall extend to all cases at law." Minn. Const. art. I, § 4. This provision preserves the right to a jury trial "as it existed in the Territory of Minnesota when our constitution was adopted in 1857." *Abraham v. Cnty. of Hennepin,* 639 N.W.2d 342, 348 (Minn. 2002). In deciding which claims are entitled to a jury trial, we have distinguished between legal and equitable claims; the right to a jury trial attaches to an action at law, but not an action in equity. *Olson v. Synergistic Techs. Bus. Sys., Inc.,* 628 N.W.2d 142, 150 (Minn.2001).

The complaint here alleges that as a result of HNE's breaches of the loan agreements, the bank is entitled to recover reasonable attorney fees. The majority concludes that HNE is entitled to a jury trial because the bank is seeking the recovery of money based on a contractual obligation, analogizing the attorney fees claim to contractual indemnity.

Although we have viewed many types of contract claims as legal claims, the contractual nature of the obligation to pay attorney fees is not determinative as to the right to a jury trial. Rather, we look at "the nature of the relief sought." *Abraham,* 639 N.W.2d at 353. Some contract remedies—for example, reformation, rescission, and specific performance—are equitable. *SCI Minn. Funeral Servs., Inc. v. Washburn–McReavy Funeral Corp.,* 795 N.W.2d 855, 859 (Minn.2011) (describing reformation and rescission as equitable re-

lief); *Rognrud v. Zubert,* 282 Minn. 430, 434, 165 N.W.2d 244, 247–48 (1969) (stating that specific performance "has long been regarded as entirely equitable"). And "[m]erely because an attorneys' fees claim can be quantified monetarily does not mean that it is 'legal' relief." *Redshaw Credit Corp. v. Diamond,* 686 F.Supp. 674, 676 (E.D.Tenn.1988). We have recognized that "[t]he recovery of money alone may be sought in an equitable action." *Swanson v. Alworth,* 168 Minn. 84, 90, 209 N.W. 907, 909 (1926). We also have decided cases involving both contract claims and requests for monetary damages where we have rejected the right to a jury trial. *See id.* at 91, 209 N.W. at 909–10; *Indianhead Truck Line, Inc. v. Hvidsten Transp., Inc.,* 268 Minn. 176, 192–94, 128 N.W.2d 334, 346–47 (1964).

## II.

Therefore, the court must examine the specific nature of the relief sought in determining whether the claim for attorney fees in this case gives rise to a constitutional right to a jury trial. The bank's right to recover attorney fees arises from specific provisions in the loan documents, which allow the bank to recover fees and costs associated with collecting amounts owed under the agreements. Among other relief, the complaint seeks recovery of the total indebtedness, "plus all additional accrued interest, charges and reasonable attorneys' fees and costs." After careful consideration of our relevant case law, I conclude that the bank's claim for attorney fees is akin to a claim for costs or disbursements, which does not implicate the right to a jury trial under the Minnesota Constitution.

The issue here is a matter of first impression. There is no case law directly on point, even though attorney fees provisions have been present in Minnesota contracts

for over 150 years. *See, e.g., Griswold v. Taylor,* 8 Minn. 342 (Gil. 301) (1863) (upholding attorney fees provision in 1858 mortgage). Nonetheless, we have consistently treated a contractual claim for attorney fees as sui generis and a matter for the court to decide. We have explained that attorney fees due under a note are not "part of the original debt" and are "not really due when suit is brought, for the services of the attorney are not then fully performed." *Campbell v. Worman,* 58 Minn. 561, 564–65, 60 N.W. 668, 669 (1894). Consequently, a claim for attorney fees arising from the nonpayment of promissory notes is not "part of the cause of action alleged." *First State Bank of Grand Rapids v. Utman,* 136 Minn. 103, 105, 161 N.W. 398, 399 (1917). Further, the claim "is not a distinct cause of action." *Id.* at 105, 161 N.W. at 399. Recognizing the unique procedural aspects of an attorney fees claim in this situation, we have described a claim for attorney fees as a collateral claim that "is not to be submitted with the issues upon which the liability of a defendant depends." *Id.* at 105, 161 N.W. at 399. Instead, we have concluded that the value of attorney fees should be determined "upon application to the court," after the underlying contract claim has been resolved. *Id.* at 105, 161 N.W. at 399; *accord Campbell,* 58 Minn. at 565, 60 N.W. at 669.

In our previous cases, we have treated a request for attorney fees due under a contract like a request for costs or disbursements, directing district courts to include the attorney fees "in the judgment, *the same as any other disbursement." Campbell,* 58 Minn. at 565, 60 N.W. at 669 (emphasis added); *see also Johnson v. Nw. Loan & Bldg. Ass'n,* 60 Minn. 393, 396, 62 N.W. 381, 382–83 (1895) (treating attorney fees as disbursements under foreclosure-by-advertisement statute, notwithstanding that "the right of a mortgagee to attorney's fees is a contract right"). In *Smith v. Chaffee,* we articulated the "general rule" that a party who succeeds in a lawsuit and is awarded costs and disbursements "has no further claim against his adversary for attorney's fees or expenses incurred in the suit," regardless of "[w]hether the action sounds in contract or in tort." 181 Minn. 322, 324, 232 N.W. 515, 516 (1930).

Analogizing a contractual attorney fees claim to a request for costs or disbursements is consistent with our treatment of statutory attorney fees. We have recognized that "a number of statutes ... specifically allow prevailing parties attorney fees as part of 'costs and disbursements.'" *Collins v. Minn. Sch. of Bus., Inc.,* 655 N.W.2d 320, 327 (Minn.2003) (concluding that statutory attorney fees were recoverable as "costs and disbursements"); *see, e.g., T.A. Schifsky & Sons, Inc. v. Bahr Constr., LLC,* 773 N.W.2d 783, 789 (Minn. 2009) (explaining that "attorney fees in mechanics' lien cases are, pursuant to statute and our case law, costs that may be awarded by the court").[1] In addition,

---

1. Our decision in *Schwickert, Inc. v. Winnebago Seniors, Ltd.,* 680 N.W.2d 79 (Minn.2004), does not undermine my conclusion that contractual attorney fees are analogous to costs or disbursements. In *Schwickert,* we simply interpreted a party's offer of judgment, which did not explicitly offer to add costs and disbursements to the lump sum amount, as resolving all claims under the contract, including contract-based attorney fees. *Id.* at 88. At the same time, we urged parties to avoid these types of disputes by specifically stating whether an offer includes or excludes attorney fees. *Id.* Our case law did make a distinction between contractual attorney fees and statutory attorney fees with respect to offers of judgment under the former Minn. R. Civ. P. 68, but that distinction was based on the "language of the rule," which we interpreted as suggesting that costs and disburse-

"costs" in English common law courts included attorney fees, "within certain limits." Charles T. McCormick, *Counsel Fees and Other Expenses of Litigation as an Element of Damages*, 15 Minn. L.Rev. 619, 619–20 (1931).

Based on our past treatment of attorney fees claims, I conclude that a claim for attorney fees arising under a contract is in the nature of a request for costs or disbursements. In fact, this is precisely how the loan agreements in this case describe the attorney fees. The various loan documents describe the attorney fees as "costs and expenses," "legal expenses," and "expenses of enforcement." *See Woolsey v. O'Brien*, 23 Minn. 71, 72 (1876) (explaining that costs and disbursements encompass "all allowances which may be made to a party to reimburse him for expenses and trouble in an action").

HNE is not entitled to a jury trial on the attorney fees claim if that same type of claim did not entitle a party to a jury trial at the time the Minnesota Constitution was adopted. *See Olson v. Synergistic Techs. Bus. Sys., Inc.*, 628 N.W.2d 142, 149 (Minn.2001). There is no evidence of a right to a jury trial on costs or disbursements at the time our constitution was adopted. *See A.G. Becker–Kipnis & Co. v. Letterman Commodities, Inc.*, 553 F.Supp. 118, 123 (N.D.Ill.1982) ("[W]hat little evidence of the pre-merger custom exists suggests that attorneys' fees and costs have traditionally been viewed as a determination to be made by the court rather than by a jury.").

Moreover, the recovery of attorney fees implicates traditional equitable principles.

The recovery of attorney fees is not like "other damages available for breach of contract," as the majority contends. In a breach of contract case, the general measure of damages is the amount that will place the nonbreaching party in the same position as if the contract had been fully performed. *E.g., Paine v. Sherwood*, 21 Minn. 225, 232 (1875). But when courts resolve attorney fees claims, they follow rules of equity. For example, in a case involving attorney fees arising from the costs of collection of a note, we directed the district court to arrive at an amount "as it shall deem reasonable and just." *Campbell*, 58 Minn. at 564–65, 60 N.W. at 668–69 (upholding the right to recover stipulated attorney fees "only to the extent of the reasonable value of the attorneys' services actually performed or to be performed"). Although the majority attempts to distinguish contractual attorney fees claims from statutory attorney fees claims, we have instructed courts to consider the same factors in resolving both kinds of claims. In a case involving unpaid amounts on promissory notes, we explained that courts should " 'arriv[e] at a fair and reasonable fee' " by examining factors that include the services performed, the ability and experience of the attorneys, the time and amount of money involved, and the results obtained. *Agri Credit Corp. v. Liedman*, 337 N.W.2d 384, 386 (Minn.1983) (quoting *Obraske v. Woody*, 294 Minn. 105, 109–10, 199 N.W.2d 429, 432 (1972) (setting forth factors to determine an award of attorney fees in a statutory mechanic's lien case)). This focus on fairness and flexibility is the hallmark of equity. *See, e.g., Beliveau v. Beli-*

---

ments for purposes of an "offer of judgment are *defined by the underlying statute*." *Collins*, 655 N.W.2d at 326 (emphasis added). I note that our rules now reflect a broader understanding of "costs and disbursements." *Compare* Minn. R. Civ. P. 54.04 (2010)

(amended May 3, 2010) ("Costs and disbursements shall be allowed as provided by statute."), *with* Minn. R. Civ. P. 54.04 (2011) ("Costs and disbursements shall be allowed as provided by law.").

*veau,* 217 Minn. 235, 245, 14 N.W.2d 360, 366 (1944) (explaining that equity "possesses the flexibility and expansiveness" to adapt to the circumstances "of each particular case so as to accomplish justice").[2]

Finally, the majority's rigid, wooden approach—treating attorney fees claims like claims for contractual indemnity without considering the unique nature of attorney fees claims—would extend the constitutional jury trial right to any claim for costs or expenses that springs from a contractual obligation. For example, the loan documents here allow for the recovery of all costs of collection and other legal expenses. Under the majority's rationale, because the bank is seeking "the recovery of money based on a contractual obligation to pay," HNE would have a constitutional right to have a jury decide expert witness fees, deposition costs, and even photocopying expenses.

The majority's decision represents a historic change in practice for Minnesota courts, which have decided attorney fees claims for the last century and a half. I cannot subscribe to this new rule. Rather, consistent with our prior treatment of attorney fees claims and the equitable nature of such claims, I conclude that when a party seeks attorney fees as legal expenses or costs of collection under an agreement, there is no right under the Minnesota Constitution to have a jury determine the amount of attorney fees.[3]

## III.

The majority's decision in this case also casts Minnesota as an outlier among jurisdictions that have considered the issue. Our court is the only court in the country that recognizes a constitutional right to a jury trial under these circumstances.

Essentially, the Minnesota Constitution protects the same jury trial rights as those protected under the United States Constitution. *Onvoy, Inc. v. ALLETE, Inc.,* 736 N.W.2d 611, 617 (Minn.2007). The majority, however, reaches a different result on this issue under the Minnesota Constitution than courts have reached under the United States Constitution. Specifically, courts deciding the right to a jury trial on an attorney fees claim under the United States Constitution have universally concluded that there is no right to a jury trial. For example, the Second Circuit has concluded that the "collateral" issue of the amount of reasonable attorney fees due under a contract does "not present the kind of common-law questions for which the Seventh Amendment preserves a jury trial right." *McGuire v. Russell Miller, Inc.,* 1 F.3d 1306, 1315 (2d Cir.1993). Other circuit courts of appeal have reached similar conclusions. *E.g., E. Trading Co. v. Refco, Inc.,* 229 F.3d 617, 627 (7th Cir. 2000) (concluding that "[t]he issue of attorneys' fees (including amount)" due under a contract constitutes "an issue to be resolved after the trial on the basis of the

---

2. The majority concludes that the substantive nature of an attorney fees claim is "an action for contractual indemnity," which the majority classifies as a traditional legal claim. "While traditionally indemnity has been viewed as a right arising out of contract," we have clarified that "the award of indemnity should follow traditional concepts of equity." *Hill v. Okay Constr. Co.,* 312 Minn. 324, 345, 252 N.W.2d 107, 120 (1977).

3. I would limit the reach of my holding to the circumstances presented by this case—where

the attorney fees sought are in the nature of costs of collection or expenses of enforcement in connection with a breach of contract claim in the same action, in contrast to cases where the claim for attorney fees arises from an attorney-client relationship. *See Simler v. Conner,* 372 U.S. 221, 223, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (holding that a claim for attorney fees in attorney-client lawsuit is a matter for the jury).

judgment entered at the trial," just as in cases involving statutory entitlements to attorney fees); *Ideal Elec. Sec. Co. v. Int'l Fid. Ins. Co.*, 129 F.3d 143, 150 (D.C.Cir. 1997) ("Where a claim for attorney's fees arises from a private contract provision, such a claim does not embody a right to trial by jury."); *Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 279 (5th Cir.1991) (holding that the Seventh Amendment does not guarantee a jury trial to determine the amount of reasonable attorney fees, as no common law right exists to recover attorney fees awarded pursuant to a contract).

In addition, no other state court has concluded that a party has a constitutional right to a jury trial on a contractual attorney fees claim of this kind. Although state courts have relied on different rationales, they all have reached the same conclusion—there is no constitutional right to a jury trial on a claim for attorney fees based on a contract. *See, e.g., Cheek v. McGowan Elec. Supply Co.*, 511 So.2d 977, 979 (Fla.1987) (explaining that "the recovery of attorney's fees is ancillary to the claim for damages"); *Hudson v. Abercrombie*, 258 Ga. 729, 374 S.E.2d 83, 85 (1988) (reasoning that "attorney fees were not allowable at common law"); *Missala Marine Servs., Inc. v. Odom*, 861 So.2d 290, 296 (Miss.2003) (concluding that trial court properly "h[e]ld a hearing after the trial of the case to hear evidence on the issue of attorney's fees"); *State ex rel. Chase Resorts, Inc. v. Campbell,* 913 S.W.2d 832, 836 (Mo.Ct.App.1995) (noting the "absence of any authority that Missouri has recognized a common law right to a jury trial to determine reasonable attorney's fees once liability has been established"); *Paramount Commc'ns Inc. v. Horsehead Indus., Inc.*, 287 A.D.2d 345, 731 N.Y.S.2d 433, 434 (N.Y.App.Div.2001) ("The amount of, if not the right to, attorneys' fees raises post-judgment issues col-

lateral to the merits in the nature of an accounting that are essentially equitable in nature."); *Murphy v. Stowe Club Highlands*, 171 Vt. 144, 761 A.2d 688, 701 (2000) (holding that determining the amount of attorney fees due under a contract involves equitable accounting).

### IV.

For these reasons, I conclude that the bank's claim for the recovery of attorney fees in this case did not give rise to the right to a jury trial under the Minnesota Constitution. I would affirm the decision of the court of appeals on this issue.

GILDEA, Chief Justice (dissenting).

I join in the dissent of Justice Dietzen.